**LEAR PETROLEUM CORPORATION,**
Appellee,

v.

**SENECA OIL COMPANY, Jerral W. Jones and W. C. Payne, Appellants.**

No. 49754.

Supreme Court of Oklahoma.

Feb. 6, 1979.

Crabtree, Miller & Musser, Oklahoma City, for appellee.

Charles Nesbitt, Oklahoma City, for appellants.

WILLIAMS, Justice.

This is an appeal from an order (No. 121482) of the Corporation Commission determining the proper and reasonable costs of drilling an oil and gas well (dry hole) entered after hearing upon the application of Lear Petroleum Corporation, pursuant to 52 O.S.1971, Sec. 87.1(d), on May 19, 1976.

A prior application by Lear, made after the well had been drilled to a depth of 7400 feet, had resulted in a forced pooling order (No. 114434) as to some of the common sources of supply underlying certain lands in Roger Mills County, Oklahoma. The pooling order, entered on July 30, 1975, designated Lear as the operator of the unit, approved the prospective costs as estimated by Lear, and provided three options for the other mineral interest owners: (1) to participate in the drilling of the well and pay their proportionate shares of the costs; (2) to accept a bonus of $75 per acre; or (3) to accept an overriding royalty of $\frac{1}{16}$ of $\frac{7}{8}$ for oil and $\frac{1}{8}$ of $\frac{7}{8}$ for gas. It further required such owners to make an election within 10 days from the date of the order as to which option to accept and provided that any dispute as to the reasonable and proper costs of drilling and production would be determined by the Commission after notice and hearing, as provided in Sec. 87.1(d).

No appeal was taken from the forced pooling order, and appellants herein, three of the other mineral interest owners, all filed written elections to participate in the drilling, as set out in (1) above, within the ten day period.

However, Lear did not require them to pay their shares of the estimated costs in cash, or to furnish security therefor, as it might have done under Sec. 87.1(d) and the Commission's order. Instead, at their request it billed them on a monthly basis for their shares of the costs.

Thereafter a dispute arose as to the proper and reasonable costs of drilling, no doubt due in part to the fact that the actual costs substantially exceeded the cost estimate made by Lear at the time of the forced pooling order, with appellants refusing to pay their proportionate shares of the disputed costs. On January 26, 1976, Lear filed an application with the Commission asking that the proper and reasonable costs be determined and the rights of the parties adjudicated.

After statutory notice was given, a hearing was held on April 20, 1976. At that

time, the well had been completed and abandoned as a dry hole.

At the hearing, Lear and the appellants, the protesting mineral interest owners, presented expert testimony of a highly technical nature. It appears that appellants' principal objection arose because Lear had contracted with its own wholly owned subsidiary, Trinity Drilling Company, for the drilling of the well, and that no competitive bids from other drilling companies had been received. However, there was undisputed testimony that at the time Lear undertook the project it had a farm-out arrangement as to a part of the acreage concerned with Kerr-McGee Corporation, and that the primary term of the Kerr-McGee leases would expire within 12 days if no well had been begun. There was also testimony that before contracting with Trinity, Lear contacted four other drilling companies and was informed that in view of the limited time, no other drilling rigs were available in the vicinity. It thus appears that the Trinity drilling rig was the only one available for the Lear project. About 30 days before, it had completed a drilling project in the same county of Mustang Production Company, and there was documentary evidence that under its contract with Mustang, Trinity was paid $50 per day *more* for "day work" than under its contract with Lear.

The evidence presented by the protesting mineral interest owners consisted largely of the testimony of witnesses who qualified as experts, who testified that in their view, the charges listed by Lear were too high. However, their testimony did not take into consideration the fact that because of the limited time involved (12 days), the Trinity drilling rig was the only one available. There was also testimony questioning the propriety of several specific items included on Lear's proposed charges.

On May 19, 1976, the Commission entered its Order No. 121482. In that order the Commission disapproved of three specific items included in Lear's list as not properly chargeable, and ordered them deleted. It further found that the balance of the charges were reasonable and proper, and the last paragraph of the order was as follows:

> "That said parties have deemed to elect and to participate in the drilling of said well and that said parties should pay their proportionate part of the costs thereof and that Lear Petroleum Corporation should send a billing with the reductions as set out above to said parties and that said parties should have ten (10) days in which to pay their proportionate part of the cost of drilling of said well."

Since a portion of the costs previously charged by Lear had been disapproved, it was necessary for Lear to re-compute the charges and send a new billing to the other owners, as provided in the quoted paragraph.

From the order, the protesting mineral interest owners appealed.

In their brief in this Court, the appellants argue, in their first proposition, that the order *must* be construed as a money judgment against appellants, and that the Commission is without jurisdiction to enter such a judgment, or to order it paid.

It may be conceded that the Commission is not a court of general jurisdiction, and may not enter a money judgment against appellants, and for this reason it is not necessary to discuss the cases cited in the appellants' brief on this point. However, we do not agree that appellants have properly construed the Commission's order. It is not in form or substance a money judgment; as appellants themselves point out in their brief, no specific amount is levied against any appellant.

Under 52 O.S.1971, Sec. 87.1(d), it is specifically provided that "In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon". Other portions of that section require the Commission to make *definite* provisions for the payment of costs in any forced pooling order, and provide that the operator of the unit shall have a lien for unpaid costs upon the mineral lease-

hold estate and production therefrom.[1] In view of these provisions and the fact that the definite provisions as to costs in the prior forced pooling order had in effect been rendered indefinite by the subsequent dispute as to costs, it was proper for the Commission to add the ten day provision in the quoted paragraph of the subject order.

The sense of the statute is that in the event of a dispute between the "owner drilling or paying for the drilling of a well for the benefit of all" and other owners as to amounts due from the other owners to the owner doing or having the drilling etc. done, the Commission has the lawful authority to "determine the proper costs" that are due, "make definite provisions for the payment of cost of development and operation," for which "the operator of such unit . . . shall have a lien on the mineral leasehold estate or rights owned by the other owners therein . . . to the extent that costs incurred in the development and operation upon said unit are a charge against such interest by order of the Commission or by operation of law."

Implicit in the language employed in the statute, "shall make definite provisions for the payment of cost" and "shall determine the proper costs" "in the event of any dispute" is the authority to provide for payment in a reasonable time certain.

No specific question is raised or need here be treated as to the authority of the Commission to allow ten days for payment of costs by those from whom they were found to be due.

In the present case the owners other than the operator accepted the pooling order, agreed to pay their share, were not required by applicant to pay it in a lump sum but were permitted to pay on monthly billing, then when the well was shown to be dry, declined to make further payment.

Deemed applicable by analogy here is the language of this Court employed in the case of *Wood Oil Co. v. Corporation Commission,* 205 Okl. 534, 239 P.2d 1021, 1027, 1950, wherein we said

> It is contemplated by the law that the owners of a working interest shall bear the cost of development and equipping a well in proportion to their respective interests in the production to be had therefrom.

No reason occurs to us why a different rule should apply in the event of a well proving to be dry.

In a second proposition, appellants argue in effect that the costs as allowed by the Commission in Order No. 121482 were not "reasonable and proper" and that the Commission's finding are not supported by substantial evidence.

The argument under this proposition consists of a general discussion of the evidence in the light most favorable to appellants. Particular reference is made to charges by appellants that Lear was guilty of negli-

---

1. 52 O.S.1971 § 87.1(d) (since amended in aspects not here germane) is of provision in pertinent part as follows: "Such pooling order of the Commission shall make definite provisions for the payment of cost of the development and operation, which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision. In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon. The operator of such unit, in addition to any other right provided by the pooling order or orders of the Commission, shall have a lien on the mineral leasehold estate or rights owned by the other owners therein and upon their shares of the production from such unit to the extent that costs incurred in the development and operation upon said unit are a charge against such interest by order of the Commission or by operation of law. Such liens shall be separable as to each separate owner within such unit, and shall remain liens until the owner or owners drilling or operating the well have been paid the amount due under the terms of the pooling order. The Commission is specifically authorized to provide that the owner or owners drilling, or paying for the drilling, or for the operation of a well for the benefit of all shall be entitled to production from such well which would be received by the owner, or owners, for whose benefit the well was drilled or operated, after payment of royalty, until the owner or owners drilling or operating the well have been paid the amount due under the terms of the pooling order or order settling such dispute."

gence in the completion of the well. However, and again as appellants themselves say in their brief, "these are issues for a damage claim or cross petition in district court litigation over the cost of the well".

 It is also suggested that a pooling order is effective only for the drilling and operation of a producing well, and that "If, as here, the well is a dry hole, all rights under the order terminate". No authority is cited in support of this novel argument, and we know of none. As we have seen, Sec. 87.1(d) provides that the operator shall have a lien as to unpaid costs " . . . on the mineral leasehold estate or rights owned by the other owners herein *and* upon their shares of the production from such unit . . . " (emphasis added). In view of this provision, it cannot be said that the rights accruing under a pooling order terminate if the well is a dry hole.

After a careful review of the record before us, we find that the Commission's Order No. 121482 is sustained by the law and substantial evidence. That being true, it must be affirmed. See Oklahoma Constitution, Art. IX, Sec. 20.

The order of the Corporation Commission is affirmed.

LAVENDER, C. J., and HODGES, BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., concur.

IRWIN, V. C. J., and OPALA, J., concur in result.