AMAREX, INC., Petitioner,

v.

The Honorable Hamp BAKER, Norma Eagleton, and James B. Townsend, Corporation Commissioners of the State of Oklahoma, and The Oklahoma Corporation Commission, Respondents.

No. 59262.

Supreme Court of Oklahoma.

Dec. 21, 1982.

As Corrected Jan. 12, 1983.

Daniel L. Evans, Evans, Carnell & De-Vore, Oklahoma City, for petitioner.

M. Keywood Deese, Conservation Atty., Gretchen Hoover, Asst. Conservation Atty., Oklahoma Corp. Com'n, Oklahoma City, for respondents, Corp. Com'n.

James M. Gaitis, Emery, McCandless, Gaitis, Bruehl & Gerstandt, Oklahoma City, David T. Burleson, El Paso, Tex., for El Paso Natural Gas Co. and El Paso Exploration Co.

LAVENDER, Justice:

These proceedings were initiated by Petitioner by application to this Court to assume original jurisdiction and petition for writ of mandamus mandating the Oklahoma Corporation Commission or its Commissioners to accept jurisdiction of Cause CD No. 99111 and No. 91429 before the Corporation Commission to set said causes for hearing on the merits and to render a decision thereon.

The allegations of the facts set forth in Petitioner's application are not in dispute and, insofar as pertinent, are as follows:

On March 25, 1981, the Corporation Commission entered its findings and order in Cause CD No. 91429 finding and determining that certain formations within a described tract of land in Roger Mills County, Oklahoma, were heretofore determined to be a 640-acre drilling and spacing unit for the common sources of supply; that Petitioner is an owner of the right to drill said unit and to develop and produce said common sources of supply; that Petitioner has not agreed with other such interest owners to pool and develop the drilling and spacing unit common sources of supply as a unit.

The Commission extended to interest owners other than Petitioner the option to participate "in the development of the unit and common sources of supply" by agreeing to pay their proportionate part of the actual cost of the wells. Petitioner was designated "operator of the well, unit, and common sources of supply covered hereby ...." The order further provides:

"That Operator shall commence operations for the drilling or other operations *with respect to the well covered hereby* within 180 days from the date of this Order and shall diligently prosecute the same to completion in a reasonably prudent manner, or this Order shall be of no force and effect, except as to the payment of bonus." (Emphasis added.)

No specific location for the initial well on the unit was specified in the order.

After other interest owners opted to participate in the development of the unit and common sources of supply, Petitioner began timely drilling operations for the drilling of a well.

After drilling 416.25 feet from the surface, Petitioner encountered difficulties in that the surface casing broke off in the borehole. After futile attempts to save the hole, Petitioner determined it could not be economically done. Thereupon, it skidded the rig six feet from the initial borehole and recommended drilling operations. After drilling to a depth of approximately 12,500 feet at an approximate total cost of $2,000,-000, other participating interest owners claimed their election to participate in the unit does not extend to the second borehole.

On September 14, 1982, Petitioner filed Cause No. 99111 before the Commission, seeking a determination by the Commission that "the costs attributable to the presently drilling unit well ... are proper well costs," and to "[a]djust the operating costs due to the loss of a hole, and determine what of these additional costs should be proportionately borne by the participating parties."

On November 1, 1982, the Commission entered its order dismissing Cause No. 99111 on the following grounds: (a) the application is an impermissible collateral attack on a prior Commission Order, prohibited by 52 O.S.1981, § 111; (b) the Commission cannot interpret or construe its own orders; and (c) the Order in Cause 91429 "on its face provides specifically for one well and does not, as many Commission orders do, provide for the drilling of any additional, replacement, or twin well."

Pending the determination of the cause before this Court, Petitioner is faced with the dilemma of setting approximately $800,-000 worth of production casing and continuing drilling operations in the face of the risk of having to assume and pay the withdrawing participating interest owners' share of the cost, or incurring $11,500 per day idle rig costs while awaiting a determination by this Court.

In *Melton v. City of Durant,* Okl., 521 P.2d 1372 (1374) (1974), we held:

"Title 12, O.S.1971 § 1452, provides that the writ of mandamus '... may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law ....' Thus, it has been held that mandamus will not lie to review the decisions of an administrative official or board where an effective remedy on judicial review may be had by appeal." (Citations omitted.)

We have further held in *Southwestern Natural Gas Co. v. Vernor,* 178 Okl. 344, 62 P.2d 1262 (1936) (Syllabus by the Court):

"Where the remedy of appeal is available to a litigant, such remedy will not be declared inadequate merely because of

inconvenience, expense, or delay. *Halliburton v. Williams,* 166 Okl. 248, 27 P.2d 360."

In accord, *State ex rel. Crawford v. Corporation Commission,* 184 Okl. 127, 85 P.2d 288 (1938).

A well-defined statutory scheme for appeal from Commission orders is afforded by 52 O.S.1981, § 111.

■ Petitioner's application to this Court to assume original jurisdiction and to issue a writ of mandamus is therefore denied.

We will next consider (as petitioner requested at oral argument) whether the record in the case before us is such as will support an appeal to this Court from the Order entered by the Commission in Cause No. 99111.

The minimum prerequisites for lodging an appeal in the Supreme Court of a decision of the Corporation Commission rendered in the exercise of its regulatory powers under the Oil and Gas Conservation Act are set forth in Rule 1.86 of the Rules of Appellate Procedure as being, "by filing a petition in error within thirty (30) days from the date of the decision sought to be reviewed is rendered, and the record shall be ready for transmission to this court not later than sixty (60) days from the date of the decision sought to be reviewed."

■ The fact that the application filed by Petitioner was titled "Application to Assume Original Jurisdiction and Petition for Writ of Mandamus" is not determinative of the true nature of the pleading. The nature of a pleading filed in a cause is determined by the subject matter thereof, and by the relief the Court is authorized to grant under it, and not by the title given it by the pleader. *Ginn v. Knight,* 106 Okl. 4, 232 P. 936 (1925).

■ Petitioner's application substantially complies with all of the requirements prerequisite to its being treated as a petition in error.

The next issue before this Court on appeal, when refined to its essence, is simply whether the Commission had jurisdiction and power to determine whether the wording in its order in Cause No. 91429: "That Operator shall commence operations for the drilling or other operations with respect to *the well* covered hereby . . . and shall diligently prosecute the same to completion in a reasonably prudent manner, . . ." (emphasis added), when taken in context with the other provisions of the Order, contemplated the possible loss of the initial borehole and a recommencement of drilling six feet from the initial borehole at the surface.

The continuing jurisdiction of the Commission to determine and re-determine provisions for the payment of development and operation costs in connection with the development of the spacing and drilling unit is no longer subject to question. Title 52 O.S.1981, § 87.1(e) expressly provides: "Such pooling order of the Commission shall make definite provisions for the payment of cost of the development and operation, which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision. In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon." In *Crest Resources v. Corporation Commission,* Okl., 617 P.2d 215 (218) (1980), we said:

"The costs' estimate in the prior pooling order constituted but a projection of reasonable expenses to be charged. It did not represent a Commission-fixed limit of liability to be borne. The cost figure always remains subject to adjustment. Until the project's completion, the amount of projected costs-approved as reasonable lacks the legal attributes of finality. In the event of a cost overrun, if a dispute does arise as to the reasonableness of the expenditures to be charged, the Commission retains primary jurisdiction to adjudicate finally the liability attachable to the interest holders."

In the case of *Cabot Carbon Company v. Phillips Petroleum Company,* Okl., 287 P.2d 675 (1955), a controversy was presented on appeal from a Commission order concerning

whether gas taken from the Guymon-Hugoton Field shall be paid for at the price specified in the parties' contract, or the price fixed by the Commission in its order. The order from which an appeal was taken clarified its previous order by setting forth the true intent and purpose of the previous order relating to the fixing of the price of gas produced. This Court said (679): "Nor can the Commission's power to clarify its previous orders be doubted under the specific wording of Tit. 52 O.S.1951 § 112. This power, as has been done in this case, can be exercised without invading the exclusive province of the Courts." The authority to establish price of the gas was seen as arising out of and dependent upon the power of the Commission to regulate the taking of the gas.

The case of *Southern Union Production Co. v. Corporation Com'n,* Okl., 465 P.2d 454 (1970) is clearly distinguishable from both *Cabot* and the case now before us. In *Southern Union, supra,* the "operator" completed a marginal initial well which it abandoned. Eason Oil Company, a non-participating interest owner, contended that the *effect* of the well abandonment was to nullify the Commission's pooling and spacing order and applied to the Commission to so "interpret" its order. The Commission issued its subsequent order determining inter alia that the abandonment of the initial well had the effect of terminating all rights under the pooling order and restored all interest holders to the position they enjoyed prior to the entry of the pooling order. We held (458): "We think, from even a casual reading of the Commission's Order No. 62,-532, that it represents that body's opinion *as to the legal effect* upon the rights of Southern Union of that company's acts when it drilled its well into and tested the affected horizons and then subsequently plugged the well as a dry or unprofitable well." (Emphasis added.) But we further said: "While such an order could perhaps be valid if it was necessarily incident to the exercise of the statutory powers of the Corporation Commission to 'prevent or assist in preventing (waste),' or, to protect the correlative rights of interested parties in a common

source of oil and/or gas, such was not the intended nor was it in fact, the effect of the Commission's Order No. 62,532. Because the latter order was not expressly nor by necessary implication authorized by either the Constitution or the statutes of Oklahoma, the same was void as beyond the power of the Commission to enter."

The Commission was not asked here to determine the legal effect of its pooling order or the legal consequences thereof. Rather, it was asked to exercise its statutory authority to determine additional development costs and, if found to be necessary and reasonable, to fix the amount thereof.

In the case of *Stipe v. Theus,* Okl., 603 P.2d 347 (1979), the duality of jurisdiction presented by the Commission's power and duty to determine development costs under 52 O.S.1981, § 87.1(e), and the district court's original jurisdiction of justiciable matters under Art. 7, § 7 of the Oklahoma Constitution was presented when the operator under a pooling, drilling, and spacing order of the Commission brought suit in the district court for judgment against a participating interest owner for the interest owner's proportionment part of the drilling costs. In holding that the district court had jurisdiction of the cause to the exclusion of the Commission's jurisdiction, we said (349):

"Reviewing the provisions of § 87.1(3), it appears the Legislature, in providing the Commission *shall* determine the proper costs in the event of a dispute, recognized that such responsibility would be merely a continuation of the Commission's regulatory authority in that a determination of the proper costs would be an integral part of regulating the conservation and production of oil and gas. It also appears the legislature did not intend to extend the Commission's authority beyond that necessary to regulate the conservation and production of oil and gas because the Commission was granted only limited powers to enforce its 'proper cost' determination. However, we will not presume the Legislature intended to divest the district court of any of its constitutional jurisdiction when it conferred

continuing jurisdiction in the Commission to determine costs in the event of a dispute arising from a forced pooling order."

█ While the precise issue now before the Court has not heretofore been considered, the implications contained within the foregoing cases demonstrably show, and we now hold, that the jurisdictional powers vested in the Commission under § 87.1(e) to determine development costs carries with it those implied powers which are necessary to review and determine the true intent of the Commission as expressed in the language of its orders issued within its legislatively prescribed jurisdiction. And we have held in *Lear Petroleum Corp. v. Seneca Oil Co.,* Okl., 590 P.2d 670 (1979) that among the powers thus implied is the authority of the Commission to provide for payment of development costs by participating interest owners "in a reasonable time certain," and in *Gose v. Corporation Commission,* Okl., 460 P.2d 118 (1969), the authority of the Commission to order a hearing of a motion to reopen proceedings in which a pooling order was entered.

With reference to the Commission's implied jurisdiction and power to clarify its true intent as expressed in the language of its orders, the observations of the Oregon Supreme Court in the case of *Cabell v. City of Cottage Grove,* 170 Or. 256, 130 P.2d 1013 (1943) applies here:

> "We are not, however, limited to the mere words of the statute. Powers may be implied as reasonably and necessarily incident to those expressly granted, and the question must be examined in the light of the principle that 'where the Legislature gives power to a public body to do anything of a public character, the Legislature means also, to give to the public body, all rights, without which the power would become wholly unavailable, although such a meaning cannot be implied in relation to circumstances arising accidentally only.' Beal's Cardinal Rules of Leg. Interp. 3d Ed. by Randall, p. 439, . . . ."

In accord, see 2 Am.Jur.2d Administrative Law, § 233. See also 1 Am.Jur.2d Administrative Law, §§ 44 and 48.

Having concluded that the Commission had power and jurisdiction to construe the meaning of the language used by it in its order, the next issue presented on appeal is whether its determinations in Cause No. 99111 are based upon "substantial evidence" under the rule enunciated in *El Paso Natural Gas Company v. Corporation Commission of the State of Oklahoma, et al.,* Okl., 640 P.2d 1336 (1981), and in *State ex rel. Cartwright v. Okl. Natural Gas,* Okl., 640 P.2d 1341 (1982), requiring a review by this Court of the whole of the evidence found in the record including such evidence which fairly detracts from the weight thereof. If it be determined that the Commission's order was not supported thus by "substantial evidence," it is the duty of the Supreme Court to reverse the order of the Commission. *Spaeth v. Corporation Commission,* Okl., 597 P.2d 320 (1979).

█ We hold that the continuous operation in the drilling of a well, during which the operator lost the initial hole, skidded the rig six feet from the initial hole and drilled to a depth of 416.25 feet, and continued drilling operations is merely an incident in the drilling of the well and does not constitute a new well. So long as the surface location of the borehole is not otherwise so precisely defined and limited, the drilling of a well consists of penetrating the earth from the surface to the prescribed depth with drilling equipment. Minor vertical or horizontal variations do not convert the operation to a new well, whether such variations occur at the surface of the earth or beneath it. The finding of the Commission that a new well was commenced was therefore not supported by substantial evidence and must be reversed.

Whether the petitioner is entitled to have the costs of both the first and second boreholes apportioned among the participating interest owners are matters which have not been addressed by the Commission. This cause must therefore be remanded to the Commission for a determination of these issues.

Since the determination of development costs is a matter of continuing jurisdiction of the Commission, and since the clarification of the language used in the Commission's order does not assail the order but illuminates its meaning, such matters do not constitute a collateral attack upon Commission's order within the meaning of 52 O.S.1981, § 111.

The Order of the Commission appealed from is reversed and the cause remanded to the Oklahoma Corporation Commission for further proceedings in keeping with the views herein expressed.

IRWIN, C.J., BARNES, V.C.J., and SIMMS, HARGRAVE and OPALA, JJ., concur.

HODGES and WILSON, JJ., concur in result.

DOOLIN, J., dissents.