**Gary A. McDANIEL, Appellant,**

v.

**Ned W. MOYER, Ann Moyer McKay, Jane Moyer Harris and Joyce Moyer Cockrell, Appellees.**

**Ned W. MOYER, Ann Moyer McKay, Jane Moyer Harris and Joyce Moyer Cockrell, Appellants,**

v.

**Gary A. McDANIEL, Appellee.**

**Nos. 52115, 52135.**

Supreme Court of Oklahoma.

April 19, 1983.

Gregory L. Mahaffey, Michael R. Wilson, Watson, McKenzie & Moricoli, Oklahoma City, for appellant Gary A. McDaniel.

Harold G. Lowrey, Wright, Lowrey & Williams, Woodward, for appellees Ned W. Moyer et al.

OPALA, Justice:

The issues presented by this appeal are: [1] Did the district court err in granting injunctive relief to prevent landowners' interference with the drilling activities on their forced pooled mineral estate unsevered from the surface? [2] Does the district court have subject-matter jurisdiction to relocate a well site designated by a Corporation Commission [Commission] order? and [3] Did landowners' pleadings or their evidence afford a basis for invoking equitable cognizance to determine their legal claim to the compensated use of the well bore at the drilling site? We answer all three questions in the negative.

The defendants below [Landowners] own the surface and minerals of an unleased 120-acre tract of land located within a 640-acre drilling and spacing unit. Part of the landowners' tract lies within the boundaries of an area where a well was authorized by an order of the Commission. An abandoned and plugged well bore was situated on this tract. Landowners lay claim to its ownership and sought to bar the operator from gaining access to it.

Gary A. McDaniel [Operator]—owner of leaseholds in the drilling and spacing unit—after failing to secure a lease from the landowners, caused their unleased mineral interest to be forced pooled. He became the designated unit operator. By its order the Commission declined to determine whether the landowners had a valid ownership claim to the well bore.

Operator selected a site on the landowners' tract for location of the well and attempted to enter the land. When denied access, he filed this action to enjoin the landowners from interfering both with his drilling operations and his efforts to use the existing well bore. The landowners sought a decree declaring that the Commission orders interposed by the operator authorized him neither to drill on the unleased land nor to use the existing well bore.

The trial court granted the operator's plea for injunctive relief and ruled that (a) the ownership of the well bore was vested in the landowners and (b) if the operator reopened it, the landowners would be entitled to recover the value of its use. The operator was also required to post a $50,000 bond to secure payment of compensation for the use of the well bore and surface damages.

Before us are the separate appeals of the landowners and the operator. While the operator challenges only those provisions of the decree which require a bond, the landowners seek corrective relief from the injunction that allowed the operator to drill on their land and to secure a compensated use of the abandoned well bore. The two appeals stand consolidated for disposition by a single opinion.

I.

The Commission orders invoked here established a standard 640-acre drilling and spacing unit, forced pooled the interests and adjudicated the rights and equities of owners in the common sources of supply underlying the unit. The spacing order, issued pursuant to the authority conferred in 52 O.S.1981 § 87.1(a), designates a tract within which a well may be drilled on the unit. The boundaries of the tract are set in conformity to a Commission rule which allows a "tolerance area" of "[n]ot less than 1320 feet from the boundary of any standard 640 acre drilling and spacing unit."[1] The abandoned well bore here in controversy is located on landowners' unleased land that lies within the established tolerance area.

1. Oklahoma Corporation Commission Rule 1–504.

■ The legal validity of the invoked Commission orders is not under attack here. All of them are final and effective.[2]

## II.

### THE LANDOWNERS' APPEAL

The landowners contend the trial court erred in allowing injunctive relief, claiming that the use of the land surface for drilling operations amounts to a taking of property without due process of law, and that a taking would also occur if the abandoned well bore were allowed to be reopened. Landowners stress they do not attack the validity of the Commission orders. They claim they seek a district court "clarification".

■ The Commission has exclusive authority to regulate the conservation of oil and gas and the drilling and operation of oil wells. 17 O.S.1981 § 52.[3] It has the "power to establish well spacing and drilling

units ... covering any common source of supply ...." 52 O.S.1981 § 87.1(e).[4] Cognizance to interpret and construe pooling orders would permit the district court to exercise a significant aspect of the Commission's regulatory authority. It would place the court in charge of an integral part of regulating the conservation and production of oil and gas. Our constitution clearly prohibits such institutional encroachment.[5] The district court is powerless to interfere with any Commission order that establishes the boundaries for well location.[6]

The Commission's own authority to clarify and construe previous orders under 52 O.S.1981 § 112 is highlighted by extant decisions.[7] Recognized by the federal courts as well,[8] it was recently reaffirmed by our pronouncement in *Tenneco Oil Co. v. El Paso Natural Gas Co.*[9]

The power of the district court over a decision of the Commission is strictly confined to a facial examination by which to determine whether that administrative

2. A final order of the Commission is not subject to its reconsideration absent a substantial change of condition. *Buttram Energies v. Corporation Commission,* Okl., 629 P.2d 1252, 1253 [1981]; *Crest Resources v. Corporation Commission,* Okl., 617 P.2d 215, 218 [1980].

3. The terms of 17 O.S.1981 § 52 provide: "All authority and duties now conferred upon the Corporation Commission or other departments of the state government in reference to the conservation of oil and gas and the drilling and operating oil and gas wells and the construction and regulation of oil and gas pipelines, are hereby conferred exclusively upon the Corporation Commission."

4. *Stipe v. Theus,* Okl., 603 P.2d 347, 349 [1979].

5. The terms of Art. 9 § 20, Okl. Const., provide in pertinent part: "* * * No court of this State, except the Supreme Court, shall ... enjoin, reverse, or interfere with the Corporation Commission in the performance of its official duties ...."

6. *Stipe v. Theus,* supra note 4 at 349.

7. *Cabot Carbon Co. v. Phillips Petroleum Co.,* Okl., 287 P.2d 675, 679 [1955]. See also *Shell Oil Co. v. Keen,* Okl., 355 P.2d 997, 1000 [1960] and *Amarex, Inc. v. Baker,* Okl., 655 P.2d 1040 [1983] where this court held that the Commission is vested with original jurisdiction to construe, modify or vacate its valid order.

8. *Constantin v. Martin,* 216 F.2d 312, 317 [10th Cir.1954].

9. Okl., —— P.2d —— [Sup.Ct. No. 53,201, October 19, 1982]. In *Tenneco* the court addressed the issue whether the district court had subject matter cognizance to review a contested election under a Commission pooling order. We noted that "[w]hat the Legislature creates in the public interest, it may expressly control in the same spirit, subject always to existing constitutional limits. When it placed the pooling order under the charge of the Commission, it did so with the directive that such an order should be made after notice and hearing and 'upon such terms as are just and reasonable' to insure each pooled owner his 'just and fair share of the oil and gas'. Under this delegation, the Commission fashions pooling orders and prescribes their special terms." We stated in *Tenneco* that the legislature, having created the pooling order to implement its conservation statutes in the public interest, may also assign to the Commission the adjudication of disputes arising from the same order and within the same public-interest purview. We noted that "[c]ourts are constitutionally prohibited from interfering with the Commission's exercise of its adjudicative functions."

agency was vested with jurisdiction to make the order.[10]

■ The landowners' premises are included within the area authorized for location of a well site. The landowners' refusal to allow the operator access to their land was in clear violation of the Commission order incorporating it within the area where a well site could be located. The order is final, unchallenged and unchallengeable in the instant action. The district court properly granted injunctive relief in aid of enforcing that order. The landowners' protest against the operator's chosen location site clearly was not remediable in a district court suit.

## III.

### THE OPERATOR'S APPEAL

The operator's appeal is from that part of the decree that requires him to post a $50,-000 bond to secure payment of "compensation" for the use of the existing well bore and for damages to the surface.[11]

■ The Commission had previously refused to deal with landowners' claimed ownership of the well bore and with their demand that its use be proscribed. The issue so tendered to the Commission clearly was outside of that tribunal's authority.

The Commission cannot determine title to an interest in land.[12]

■ The district court undertook to adjudicate the landowners' claims to the well bore. It ruled that the ownership of the well bore, upon its abandonment by the prior lessee, came to be vested in the landowners. This appeal does not challenge that part of the trial court's decree.[13] Rather, the question pressed upon us here is whether the district court erred in imposing the bond requirement and in determining that the operator would be liable for compensation if he proceeded to utilize the abandoned well bore.[14]

While the operator clearly was entitled to the injunctive relief sought and allowed, the trial court erred insofar as its decree attempted to affect the issue of operator's liability for damages from an anticipated invasion of landowners' asserted interest in the well bore. This was an operator's suit for injunction to prevent the landowners from interfering with his proposed activities on the chosen drilling site. The landowners sought neither a judgment at law imposing liability on the operator nor a declaration of their claim to a compensated use of the well bore.[15] They merely defended against the plea for injunctive relief.

---

**10.** *Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376, 378 [1981].

**11.** We need not deal here with the surface damage issue. An answer to that question may have been provided by our opinion in *Cormack v. Wil-Mc Corporation,* 661 P.2d 525, 54 OBJ 903 (Sup.Ct.1983).

**12.** *Southern Union Prod. Co. v. Corporation Com'n,* Okl., 465 P.2d 454, 457 [1970].

**13.** The landowners' ownership of the bore hole has never been a controverted issue here. The real issue in dispute was whether the operator was entitled to an uncompensated use of the bore hole. That legal issue could not be litigated as a defense to an injunction suit absent some compelling equitable considerations. Short of an emergency, an injunction suit cannot be used to litigate title to property or property rights or for the purpose of transferring possession from one party to another. *Montgomery v. Coleman-Nelson Gasoline Co.,* 130 Okl. 14, 264 P. 895 [1928]; *Mid-Continent Pipe*

*Line Company v. Emerson,* Okl., 396 P.2d 734, 736 [1964].

**14.** This case is not affected by the after-enacted legislation that requires a bond of a drilling operator. Because it was commenced before the passage of HB 1460, Laws 1982, c. 341, § 3, p. 1063 [52 O.S.Supp.1982 § 318.4], it is not governed by its provisions. Section 318.4 requires pre-entry notice and prescribes procedures for dealing with surface damages in drilling operations for oil-and-gas and for the posting of a bond with the Secretary of State. Before the enactment of the cited statute the landowners' claim under consideration was governed solely by the traditional boundaries between legal and equitable remedies. Our holding here rests entirely on these principles. See footnote 16, *infra.*

**15.** The operator's petition seeks a temporary and permanent injunction. The landowners' response to the application for temporary injunction—the only defensive instrument on file—asserts ownership of the well bore and

The bond required by the trial court was neither needed nor imposable as an incident of permanent injunction granted to the operators.[16] Its intended purpose was to secure the landowners against the operator's *potential* liability in case the well bore were in fact used. The nature and extent of that liability was not *sub judice.* It was tendered neither by pleadings nor proof and hence could not be litigated.[17] There had been as yet *no* invasion of the landowners' asserted rights and no occasion shown for equitable intervention or relief.[18] In short, the bond requirement, which cannot be regarded here as incidental either to some interest adjudged or to one that was tendered for decision in this equitable suit, is entirely without any basis in law.

The operator is accordingly relieved of his duty to comply with the bond provision, and insofar as the trial court's decree undertakes to deal with, or affect, the operator's future liability for his anticipated use of the well bore, it is to be treated as surplusage. It lies outside the equitable issues that were *actually tendered and litigated below.*

The decree allowing an injunction against the landowners is affirmed as modified.

BARNES, C.J., and IRWIN, LAVENDER, HARGRAVE and WILSON, JJ., concur.

denies any right of the operator to enter the land or to gain access to the well bore. In the alternative, the landowners sought a denial of the temporary injunction or an order requiring that a bond be posted in an amount sufficient to compensate them for "their loss, damages and injury."

(A) The landowners' response does not appear to be effective as a "pleading" because it does not raise issues on the merits, i.e. issues relating to the *permanent injunction. Morse v. Earnest, Inc.,* Okl., 547 P.2d 955, 957 [1976]. The response merely raised issues defensive to the operator's application for temporary injunction.

(B) The response is also ineffective as a counterclaim. An injunction may be obtained upon an answer in the nature of a counterclaim. 12 O.S.1981 § 1396. Claims between parties are not raised if pleaded as defensive matters in actions arising between them. They are available only when properly pleaded as counterclaims (*Rourke v. Bozarth,* 103 Okl. 133, 229 P. 495, 498 [1924] ) i.e. set out fully and distinctly with the same substantial requisite as the original cause of action. *Allied Paint Mfg. Co. v. Banes,* 208 Okl. 119, 253 P.2d 826, 828–829 [1953]. The response's alternative prayer for a bond to secure their damages from an anticipatory trespass does not rise to a counterclaim actionable in equity or at law.

(C) Aside from a pleading failure, there was here also a postural failure. The landowners' position was that the operator had no right to either a compensated or uncompensated use of the well bore and, therefore, they did not seek a determination of compensation to be due them. Instead, they merely asked for a bond to secure potential damages to their land. The trial judge required the security of a bond *before* there could be an orderly judicial determination that the operator was in fact not entitled to an uncompensated use of the well bore. Since the issue of "compensated use" (1) was not raised by the pleading and (2) was not ancillary to any issue properly before the court, it was clearly error to require the operator to post a bond anterior to an orderly adjudication. The trial court should have confined itself to the issue of the operator's right of access to the well drilling site.

16. Compelling equitable considerations that would warrant the imposition of a bond were neither pleaded nor proven.

Once the trial court determined that the landowners were entitled to compensation for the use of the well bore—an issue not properly before it—the operator's entry upon the land, before he made the required compensatory payments to the landowners, would constitute a trespass. Equity will not restrain the commission of a tort where the legal remedy of compensatory damages would be complete and adequate. Pomeroy, A Treatise On Equity Jurisprudence, § 1357 [5th Ed.1941]. No equitable considerations were pleaded or proven either for the imposition of a bond or for injunctive relief from anticipatory trespass.

17. We leave unsettled by this opinion the question whether the unit operator may be called upon to respond in damages for using an existing bore hole upon an authorized drilling site in order to reduce the cost of drilling a well.

18. Ordinarily, equity—in the absence of other grounds for equitable intervention—will not intercede to give relief from future trespass where there is an adequate remedy at law. *Roma Oil Co. v. Long,* 68 Okl. 267, 173 P. 957, 958 [1918]; *Deskins v. Rogers,* 72 Okl. 274, 180 P. 691, 692 [1919]; *Choctaw Lumber Co. v. McKeever,* 119 Okl. 282, 249 P. 712, 714 [1926].

SIMMS, V.C.J., concurs in judgment.

HODGES and DOOLIN, JJ., concur in Parts I and II and dissent from Part III.