PENNACO RESOURCES,
CORPORATION,
Appellant,

v.

The OKLAHOMA CORPORATION
COMMISSION and Sanguine,
Ltd., Appellees.

No. 77226.

Court of Appeals of Oklahoma,
Division No. 1.

May 5, 1992.

Robert A. Miller, Robert A. Miller & Associates, Oklahoma City, for appellant.

Eric R. King and Linda A. King, King & King, Oklahoma City, for appellee Sanguine, Ltd.

Kent Douglas Talbot, Oklahoma Corp. Com'n, Oklahoma City, for appellee Corp. Com'n.

BAILEY, Judge:

Appellant Pennaco Resources Corporation (Pennaco) seeks review of an order of the Corporation Commission sitting *en banc* (Commission) adopting the findings of the appellate hearing officer and holding that well costs assessed by Appellee Sanguine, Ltd. (Sanguine) were reasonable and necessary. Herein, Pennaco asserts (in essence) no liability for costs incurred in the drilling of an "unauthorized, off pattern, bottom hole location."

Sanguine drilled the Schlitt Well in Section 2, T5N, R10W, Caddo County, Oklahoma, in accord with Commission pooling orders. Pennaco, as a forced-pooled working interest owner, elected to participate in the well. Subsequent to completion and eventual abandonment of the well, a dispute arose between Pennaco and Sanguine as to the reasonableness of certain costs incurred in drilling.

Thereafter, Sanguine filed motions before Commission for determination of reasonableness of costs associated with drilling. During the proceedings, and for purposes of hearing before the Commission only, Sanguine agreed to reduce its claim by the sum of costs disputed by Pennaco. Pennaco nevertheless refused to pay even its proportionate share of the remaining costs, asserting that Sanguine had "intentionally" drilled the "illegal" well to an off-pattern location without Pennaco's knowledge or consent, relieving Pennaco from liability for costs.

After hearing, the Administrative Law Judge (ALJ) determined the remaining costs claimed by Sanguine were necessary and reasonable, but refused to address Pennaco's assertion of "illegality." The Appellate Administrative Law Judge (AALJ) affirmed the decision of the ALJ, finding Sanguine's costs necessary and reasonable. The AALJ further determined Pennaco's argument of illegality without merit, finding that Sanguine had not intentionally deviated the bottom hole location of the well.

Pennaco sought further review before the Commission *en banc*. The Commission affirmed the AALJ's decision, finding substantial evidence to support the determination that Sanguine did not intentionally deviate the subject well, and determining that Sanguine's actions with regard to the subject well were reasonable. The Commission further found that Pennaco had failed to properly present the issue of Commission jurisdiction to determine the reasonableness of well costs for an illegal well. Pennaco now seeks review before this court, and proposes the issue in this case thusly:

> [W]hether a force pooled working interest owner has the right in a cost determination case to object to the "reasonableness" of the costs of a well based on evidence discovered during the proceeding that the subject well was drilled to an unauthorized, off pattern, bottom hole location.

In support of its argument, Pennaco asserts costs for an unauthorized, or illegal, well are *per se* unreasonable, and specifically asserts (1) presentation below of substantial evidence that the subject well was drilled and completed without authority (i.e., off pattern bottom hole), and abuse of discretion by Commission in determining the subject well costs were reasonable in the face of substantial evidence of (2) unauthorized location, and (3) "fraud" by Sanguine in drilling in an unauthorized off-pattern location. Although couched in somewhat different terms, each of Pennaco's three propositions of error shares the common theme of Sanguine's alleged intentional, unauthorized and illegal drilling of an off-pattern well, for the costs of which Pennaco should not be held liable, and error of the Commission in rejecting this argument in all three levels of review.

■ In support of its argument, Pennaco first cites 52 O.S.1991 § 87.1 for the proposition that unit wells must be drilled at the location prescribed by Commission, "with such exception as may be reasonably necessary." Pennaco then cites Commission OGR Rule 1–504 A(4) providing that (1) a well on a standard 640–acre drilling and spacing unit must be drilled not less than 1,320 feet from the unit boundary, and (2) if the subsurface location is off-pattern, the operator must obtain a location exception order from Commission before drilling or producing. Pennaco then asserts the evidence before Commission shows not only that the subject well had a subsurface location approximately 900 feet from the unit boundary, but also that Sanguine intentionally drilled the well in such an "illegal" location, and that Pennaco became aware of this only during the first hearing.

The record, however, reflects otherwise. First, we note the pooling orders involved in this matter, signed by Pennaco, specifically note the existence of problems previously encountered in drilling through the particular sub-surface formations involved. The pooling orders then authorized Sanguine to drill a substitute or "in lieu" well if Sanguine "encounters sub-surface conditions which, in the opinion of Sanguine, make further drilling impossible or impractical ... (Sidetracking as part of a continu-

ous operation of the initial unit well should be considered part of the initial unit well operations....)" Second, the record reveals that Sanguine encountered numerous problems in drilling the subject well, particularly: (1) that sidetracking occurred causing the hole to "drift" to the north; (2) that Sanguine utilized control or steering tools to keep the hole from going farther off track to the north; (3) that Sanguine chose a surface location of 1,720 feet from the north boundary of the unit to allow the well to drift north to a legal location 1,320 feet from the north boundary; and (4) that Sanguine did not produce the well but tested same and, possibly due to an unfortunate frac job, found it unproductive, absolving Sanguine of the need to obtain a location exception prior to production.[1]

■ The Commission is a tribunal of limited jurisdiction, vested with the power to prevent waste of oil and gas resources and protect correlative rights of oil and gas owners.[2] The Corporation Commission, however, has no jurisdiction to adjudicate private disputes.[3] In appeals from orders of Commission, the review by this Court "shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence."[4]

■ In the instant case, and insofar as the Commission determined Sanguine costs necessary and reasonable under the circumstances of this case, we find no error. That is to say, the evidence arguably shows (and the Commission so found) that the pooling orders contemplated the possibility of drilling problems by including therein sidetracking provisions (as encountered by Sanguine), that Pennaco had notice thereof, and Sanguine took steps to minimize deviation. The evidence also arguably shows (and the Commission also found) that Sanguine intentionally took no action to cause an increase in drilling costs, that problem-free drilling cannot be guaranteed, and that Sanguine's actions with respect to the subject well were reasonable under the circumstances. Based on the record herein, we find Commission's conclusions and findings sustained by law and substantial evidence adduced.[5]

The order of the Corporation Commission determining and establishing Sanguine's reasonable and necessary costs of drilling and requiring Pennaco to pay its proportionate share thereof is therefore AFFIRMED.

GARRETT, P.J., and ADAMS, J., concur.

**1.** Pennaco asserts Sanguine's drilling prospectus itself evidences Sanguine's intent to allow the subject well to drift within 800 feet from the north boundary, directing this Court's attention to handwritten notations in the margin of the prospectus. However, the person who made the notations, Sanguine's engineer, proffered uncontroverted testimony that he entered the notation well after the prospectus had been completed and after Sanguine encountered problems in drilling. We therefore find no evidence to support Pennaco's assertion.

**2.** *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 687 P.2d 1049 (Okl.1984).

**3.** See, *Chicago R.I. & P. Ry. Co v. State,* 158 Okl. 57, 12 P.2d 494 (1932) (no jurisdiction to direct railway to construct private railway crossing); *McDaniel v. Moyer,* 662 P.2d 309 (Okl.1983) (no jurisdiction to determine title to property); *Lear*

*Petroleum Corp. v. Seneca Oil Co.,* 590 P.2d 670 (Okl.1979) (no jurisdiction to enter money judgments against any party). The proper forum for resolution of private disputes is in the District Court. *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 687 P.2d 1049 (Okl.1984); *Samson Resources Co. v. Corporation Commission,* 702 P.2d 19 (Okl.1985); *Hunton Oil v. Atchison, T. & S.F. Ry. Co.,* 738 P.2d 191, 193 (Okl.App.1987).

**4.** Oklahoma Constitution Article 9, Section 20.

**5.** Insofar as there remain issues to be resolved between Pennaco and Sanguine for any negligence or fraud as alleged by Pennaco, we believe resolution of those questions properly left to the district court if Pennaco so chooses. See, footnote 4.