2006 OK CIV APP 117

**Deborah SISK and Connie Vaughan, Plaintiffs/Appellants,**

**v.**

**Kim GAINES, Defendant,**

**and**

**Allstate Insurance Company, Garnishee/Appellee.**

**No. 102,268.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 29, 2006.

Scott R. Jackson, Boettcher, Martin, Jean & Jackson, Ponca City, OK, for Plaintiffs/Appellants.

Amy L. Alden, Durbin, Larimore & Bialick, P.C., Oklahoma City, OK, for Garnishee/Appellee.

Opinion by JOHN F. FISCHER, Judge.

¶1 Plaintiffs appeal from the Trial Court's order granting summary judgment in favor of the automobile liability insurer in this post-judgment garnishment proceeding. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp.2003, ch. 15, app. 1. Based on our review of the record on appeal and applicable law, we reverse and remand for further proceedings.

## BACKGROUND FACTS

¶2 On October 2, 1999, a vehicle driven by Kim Gaines collided with a vehicle driven by Plaintiff Connie Vaughn. Plaintiff Deborah Sisk was a passenger in Vaughn's vehicle, and both women sustained injuries in the

accident. The vehicle Kim Gaines was driving at the time of the accident, a 1999 Buick, was owned by Enterprise Rent-a-Car, but had been leased to Leona Hudson. Fred Hudson, Leona's husband, was a front-seat passenger in the Buick at the time of the accident, and had been listed on the rental agreement as an additional authorized driver.

¶ 3 According to Fred Hudson, Gaines was "a friend of a friend," and was driving the rental vehicle because he had been drinking alcohol. They were on their way to the store to buy some beer when the accident occurred.

¶ 4 Plaintiffs filed an automobile negligence action against Gaines on August 14, 2000, seeking recovery for property damage and personal injuries sustained in the accident. Although properly served, Gaines failed to enter an appearance or answer Plaintiffs' petition. Plaintiffs filed a motion for default judgment, which the Trial Court granted following a hearing. On August 1, 2002, the Trial Court entered judgments awarding Plaintiff Deborah Sisk damages in the amount of $9,000, and awarding Plaintiff Connie Vaughn $3,000 for her personal injuries and $4,123 for damage to her vehicle. The Trial Court also awarded Vaughn a $3,000 attorney fee for her property damage claim. The Trial Court awarded both Plaintiffs pre-judgment and post-judgment interest.

¶ 5 At the time of the accident, Fred and Leona Hudson were insured under an automobile liability policy (the Policy) issued by Allstate Insurance Company. The Hudsons had rented the Buick from Enterprise to use while their 1996 Cadillac, a covered vehicle under the Policy, was undergoing repairs. Plaintiffs initiated garnishment proceedings against Allstate, on July 23, 2004, to collect their judgment against Gaines. Allstate denied any liability or indebtedness to Plaintiffs, asserting that Gaines was not entitled to liability coverage under the Policy. Plaintiffs timely filed notice of their election to take issue with Allstate's answer.

¶ 6 Allstate filed a motion for summary judgment, asserting that the Policy provided no coverage for the accident with Plaintiffs because: "Kim Gaines was not an insured under the Allstate policy, and as to her, the involved car was not a covered automobile." Allstate maintained that the vehicle Gaines was operating at the time of the accident fell within the policy definition of a "non-owned vehicle" and, under that circumstance, the Policy unambiguously limited coverage to the "named insured" or "any resident relative." Allstate pointed out that Gaines's status was neither that of a named insured nor a resident relative, and for that reason, claimed no coverage existed and that it was entitled to judgment as a matter of law.

¶ 7 Plaintiffs objected to Allstate's motion for summary judgment, claiming that the Policy afforded coverage because Gaines's status was that of a permissive driver of an insured automobile. Plaintiffs argued in the alternative that an ambiguity or uncertainty existed in the Policy's language regarding coverage for an insured person "using" a non-owned auto. They pointed out that, although not driving, named insured Fred Hudson was, nevertheless, "using" the rented auto at the time of the accident, and, therefore, the policy should be interpreted so as to provide coverage for their injuries. Plaintiffs also sought a summary ruling in their favor that, at the very least, Allstate was obligated for the statutory minimum amount of coverage required by Oklahoma's Compulsory Liability Insurance Law. *See* 47 O.S. 2001 §§ 7–601 through 7–609. Plaintiffs argued that to deny them any coverage would violate the purpose behind the legislation, which was to compensate victims of the negligent operation of a motor vehicle by requiring a minimum amount of liability coverage.[1]

¶ 8 Both parties attached evidentiary materials to their motions, but the materials tendered did not include a copy of the Policy, the declarations page or any of the endorsements. The parties presented oral arguments in support of their motions, but ten-

---

1. At the time of the accident, the minimum coverage amounts were $10,000 per person, $20,000 per accident, and $10,000 for property damage pursuant to 47 O.S.2001 § 7–204. These amounts were increased effective Nov. 1, 2004. 47 O.S. Supp.2004 § 7–204(2). The actual coverage limits available under the Hudsons' policy are not ascertainable from the record.

dered no additional evidentiary materials at the hearing. The Trial Court entered an order granting judgment in favor of Allstate. It denied the garnishment without detailing its reasoning, merely stating that it found Allstate's motion for summary judgment "meritorious." Plaintiffs appeal.

## STANDARD OF REVIEW

¶ 9 Allstate sought summary judgment "pursuant to Rule 13 of the Rules for District Courts of Oklahoma," 12 O.S. Supp. 2002, ch. 2, app. 1, and Plaintiffs combined a cross-motion for summary judgment with their response to Allstate's motion. However, the nature of a motion, pleading or instrument filed in a case is determined neither by the title given it nor by the author's or parties' characterization of it. Instead, it "is determined by the subject matter thereof, and by the relief the court is authorized to grant under it." *Amarex, Inc. v. Baker*, 1982 OK 155, ¶ 18, 655 P.2d 1040, 1043. Selection of the appropriate standard of appellate review requires correct characterization of the trial court proceedings. *Patel v. O.M.H. Med. Ctr., Inc.*, 1999 OK 33, ¶ 16, 987 P.2d 1185, 1192, *cert. denied*, 528 U.S. 1188, 120 S.Ct. 1242 (2000).[2]

¶ 10 In an appeal involving a post-judgment garnishment against an automobile liability insurer, the Oklahoma Supreme Court sanctioned disposition by "summary process" of properly identified, uncontested post-judgment issues. *O'Neill v. Long*, 2002 OK 63, 54 P.3d 109. The Court stated:

> A garnishment proceeding may be decided by summary process resulting in a post-judgment order where it appears there is no dispute as to any identified material fact or inference to be drawn therefrom *and all material facts are stipulated or otherwise established.* These legal rulings are reviewable *de novo*, independent of and without deference to the trial court.

*Id.* at ¶ 9, 54 P.3d at 111 (emphasis added) (footnotes omitted).[3] Accordingly, we will engage in a *de novo* review to determine whether the tendered materials substantiate the grant of judgment to Allstate.

## DISCUSSION

¶ 11 A post-judgment garnishment proceeding "is a special and extraordinary remedy given only by statute," which allows a judgment creditor to secure payment of a judgment through enforcing a liability owed to the judgment debtor by a third party. *Johnson v. Farmers Alliance Mut. Ins. Co.*, 1972 OK 114, ¶ 9, 499 P.2d 1387, 1390 (citing *La Bellman v. Gleason & Sanders, Inc.*, 1966 OK 183, 418 P.2d 949). As against an insurer, the remedy is "in aid of and ancillary to the main action" against the insured and has nothing to do with the merits. *Spears v. Preble*, 1983 OK 8, ¶ 23, 661 P.2d 1337, 1343. The judgment creditor may claim no greater rights against the garnishee than the judgment debtor possesses. *Culie v. Arnett*, 1988 OK 134, ¶ 5, 765 P.2d 1203, 1205. An insurer's liability to the insured can be neither created nor enlarged in a garnishment proceeding. *Id.* at ¶ 10, 765 P.2d at 1206. Thus,

2. In *Patel*, where the Trial Court had granted a petition to vacate a prior judgment upon cross-motions for summary judgment, the Court determined that Rule 13 procedures were not available to the parties in a vacation proceeding, noting that *"[b]y its very terms, Rule 13 applies to prejudgment issues only." Patel*, 1999 OK 33 at ¶ 18, 987 P.2d at 1193. The Court explained that, because "the Rule 13 procedural regime *is textually confined to prejudgment issues,*" and "a vacation proceeding is a *statute-governed procedure to determine postjudgment issues,*" "summary adjudication process cannot be utilized to decide the matters in contest." *Id.* Although the Court treated the parties' summary judgment motions as "mere cross-motions to enter the matter for hearing," *Id.* at ¶ 19, 987 P.2d at 1194, it found "no legal impediment" to the use of evidentiary materials "to eliminate from ad-

versary contest *any individually and clearly defined fact issue* that is claimed as undisputed and shown to be supported *solely by inferences* consistent with the movant's position in the case." *Id.* at ¶ 18, 987 P.2d at 1193.

3. The Court in *O'Neill* pointed out that use of "summary process" in a post-judgment garnishment proceeding was "not in discord" with *Patel's* holding that Rule 13 is not applicable to post-judgment proceedings. *Id.* at n. 4, 54 P.3d at 111, n. 4. Rule 13 was amended effective October 17, 2002, to allow a party to "move for either summary judgment or summary disposition of any issue on the merits," and appears to resolve this issue discussed in *Patel*. *See* 12 O.S. Supp.2002, ch. 2, app. 1.

Plaintiffs' ability to recover their judgments from Allstate is defined by the language of the Policy and the obligations of law imposed by the Legislature on those who provide coverage. The question to be resolved in this appeal is whether Gaines, a permitted user of the Hudsons' rental car, was covered by the Policy.

¶ 12 An insurance policy is a contract, to be construed as any other contract under Oklahoma law. *See Dodson v. St. Paul Ins. Co.*, 1991 OK 24, ¶ 10, 812 P.2d 372, 376. Courts generally look to the four corners of an insurance contract and consider it in its entirety in determining the rights and liabilities arising thereunder, without narrowly focusing on some clause or language taken out of context. *Id.* at ¶ 12, 812 P.2d at 376.

The general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the policy.

*Id.* at ¶ 13, 812 P.2d at 377.[4]

¶ 13 The determination of whether an insurance contract is ambiguous is a matter of law for the court to determine. *Id.* at ¶ 12, 812 P.2d at 376. If the terms of an insurance contract are susceptible to more than one interpretation, and reasonably intelligent persons would differ as to their meaning, they are ambiguous. *Max True Plastering Co. v. U.S.F. & G. Co.*, 1996 OK 28, ¶ 20, 912 P.2d 861, 869.

¶ 14 The Policy that Allstate issued to the Hudsons is not included in the record on appeal. Allstate set forth only a few selected provisions from the Policy in its motion for summary judgment. Although Allstate stated that the Policy was attached to its motion as "Exhibit F," it failed to actually include a copy of the Policy as an exhibit. Exhibit F consisted of a one-page certification from Allstate's national claim support office, which verified that "the enclosed" was a copy of the Hudsons' policy that was in effect on the date of the accident. Contrary to the certification, the Policy was not enclosed. When Plaintiffs filed their response to Allstate's motion, they pointed out this omission and advised the Trial Court: "Plaintiffs will submit as evidence a copy of the Allstate Indemnity Auto Insurance Policy at the hearing on Garnishee's [Allstate's] Motion for Summary Judgment."

¶ 15 Plaintiffs did not submit a copy of the Policy at the time of the hearing, but instead announced to the Trial Court that the policy excerpts represented the "appropriate language" in effect at the time of the accident. The parties have, therefore, agreed that the portions of the Policy included in the record constitute the relevant language material to a resolution of this dispute.

¶ 16 The portions of the Policy relied on by the parties are as follows, with ellipsis marks just as they appear in the record:

. . .

**Definitions Used Throughout the Policy**

1. **"Additional Auto"** means an **auto** or **utility auto** of which **you** become the owner during the policy period. . . .

. . .

5. **"Insured Auto"** means any **auto** or **utility auto you** own which is described on the Policy Declarations. This also includes:

    a. A **replacement auto;**

    b. An **additional auto;**

    c. A **substitute auto;**

    d. A **non-owned auto;** . . .

6. **"Non-owned Auto"** means an **auto** used by **you** or a **resident** relative with the owner's permission but which is not:

    a. owned by **you** or a **resident** relative, or

---

4. "The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the others." 15 O.S.2001 § 157. Pursuant to the Oklahoma Insurance Code, "[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or modified by any rider, endorsement, or application attached to and made a part of the policy." 36 O.S.2001 § 3621.

b. available or furnished for the regular use of **you** or a **resident** relative.

7. **"Replacement Auto"** means a newly acquired **auto** or **utility auto you** own which is a permanent replacement for the **auto** described on the Policy Declarations....

8. **"Resident"** means a person who physically resided in **your** household with the intention to continue residence there. **We** must be notified whenever an operator becomes a **resident** of **your** household....

9. **"Substitute Auto"** means a **nonowned auto** being temporarily used by **you** or a **resident** relative with the permission of the owner while **your insured auto** is being serviced or repaired,....

. . .

10. **"You"** or **"Your"** means the policyholder named on the Policy Declarations and that policyholder's **resident** spouse.

. . .

**Part 1**

**Automobile Liability Insurance Bodily Injury Liability—**

**Coverage AA**

. . .

**General Statement of Coverage**

If a premium is shown on the Policy Declarations for Bodily Injury Liability Coverage and Property Damage Liability Coverage, **Allstate** will pay damages which an **insured person** is legally obligated to pay because of:

1. **bodily injury** sustained by any person, and

2. Damage to, or destruction of, property, including loss of use.

. . .

**Additional Definitions For Part 1**

**"Insured Person(s)"** means:

1. While using **your insured auto:**

a. **you,**

b. any **resident,**

c. and any other person using it with **your** permission.[5]

2. While using a **non-owned auto:**

a. **you,** and

b. any **resident** relative.

◼ ¶ 17 Noting that its coverage for non-owned automobiles is limited to the named insured or resident relatives, Allstate argues it is not liable under the Policy because Gaines was neither a relative of the Hudsons nor a resident of the Hudson household at the time of the accident.[6] While the Policy definition of "non-owned auto" is broad and covers the Hudsons' rental car, that does not end the inquiry. A "substitute auto" is defined in the Policy as a non-owned auto temporarily used while the insured auto is being repaired. Under one interpretation Gaines, a permitted user of a substitute auto, would be covered under the Policy's terms. However, we find it unnecessary to interpret the contract language because Allstate is required by statute to provide coverage to a permitted user of its insureds' rental car.

¶ 18 The material facts necessary to a resolution of this garnishment proceeding are not in dispute and are apparent from the record: (1) the Hudsons' 1996 Cadillac was an "insured auto" under the Policy; (2) Fred Hudson was an "insured person" pursuant to the Policy; (3) the Enterprise rental car was covered as a "substitute auto" according to the Policy's terms; (4) Gaines was not a resident relative of the Hudson household; and (5) Gaines was a permitted user of the rental car.

¶ 19 The Policy provided coverage for any insured person driving a substitute auto and would have clearly provided coverage if Hudson had been the driver of the rental car at the time of the accident. The Policy, in its definition of "Insured Person(s)," also provided coverage for the Hudsons' Cadillac and any permitted user thereof, whether or not that user was a resident relative.

---

5. This provision, which extends liability coverage to the named insured and other persons using the insured vehicle with permission, is referred to as the "omnibus clause." *O'Neill,* 2002 OK 63 at ¶ 10, 54 P.3d at 112.

6. Allstate does not argue that it is permitted to exclude Gaines while driving the rental car pursuant to 47 O.S.2001 § 7–600(1)(c). For the reasons stated herein, that permitted statutory exclusion would not be available because it would not be "in accordance with existing laws."

¶ 20 This "omnibus clause" providing coverage for permitted users not only appears in the language of the Policy, but is also required by statute. Oklahoma's Compulsory Liability Insurance Law requires that an owner's liability insurance policy "shall insure the person named therein and insure any other person ... using an insured vehicle with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, operation or use of such vehicle." 47 O.S.2001 § 7–600(1)(b). The Hudsons chose this method of satisfying their obligations pursuant to the Financial Responsibility Act. 47 O.S.2001 § 7–204. The Hudsons contracted with Allstate to provide their owners policy and, having accepted that contract, Allstate was required to provide that policy "in accordance with coverage required by the Compulsory Liability Insurance Law of Oklahoma." 47 O.S.2001 § 7–600.1(A).

¶ 21 The omnibus clause creates liability coverage in favor of permitted users and "protects third parties wrongfully injured by the use of the insured vehicle by persons other than the owner." *O'Neill*, 2002 OK 63 at ¶ 10, 54 P.3d at 112. *O'Neill* invalidated a policy provision that purported to limit the carrier's liability to permitted users *acting within the scope of the permitted use*, finding the contract limitation inconsistent with the public policy of the Compulsory Liability Insurance Law. Although *O'Neill* dealt with the scope of permitted use, we find that case to be controlling.

¶ 22 It would be inconsistent with the public policy of the Compulsory Liability Insurance Law to permit the Hudsons and Allstate to agree to provide coverage for a permitted user of one kind of covered vehicle but not another. That law "evinces an unmistakable intent to maximize insurance coverage for the greater protection of the public." *Id.* at ¶ 18, 54 P.3d at 113. To the

extent that the Policy could be construed to cover Gaines while she drove the Hudsons' Cadillac, but exclude her as an insured person while she drove the Hudsons' rental car with permission, the "clearly articulated public policy of our compulsory liability insurance law plainly overrides contrary private agreements that ... do not square with the purpose of the Act." *Id.* at ¶ 14, 54 P.3d at 113.

## CONCLUSION

¶ 23 From our *de novo* review of the Policy provisions and the undisputed facts before the Trial Court, we conclude that Allstate was required by the Oklahoma Compulsory Liability Insurance Law to provide coverage in the Hudson policy for permitted users of covered vehicles, including rental cars. The summary disposition of the Trial Court is reversed, and this case is remanded with instructions to enter an order in favor of Plaintiffs on their cross-motion for summary disposition of the garnishment, to the extent of the applicable limits provided by the Compulsory Liability Insurance Law. Because disputed issues of fact remain regarding coverage beyond the statutory minimum limits, the case is remanded for such further relief in the post-judgment garnishment proceeding as is consistent with this Opinion and applicable law.

¶ 24 **REVERSED AND REMANDED WITH INSTRUCTIONS FOR FURTHER PROCEEDINGS.**

WISEMAN, P.J., and GOODMAN, J., concur.