**SOHIO PETROLEUM COMPANY, Plaintiff in Error,**

v.

**G. C. PARKER and the Corporation Commission of Oklahoma, Defendants in Error.**

No. 37678.

Supreme Court of Oklahoma.

Dec. 10, 1957.

T. Murray Robinson, Robinson, Shipp, Robertson & Barnes, Oklahoma City, and Geo. W. Hazlett, Cleveland, Ohio, for plaintiff in error.

Houston Bus Hill, Oklahoma City, for defendant in error G. C. Parker.

Ferrill Rogers, Oklahoma City, for Corporation Commission.

WILLIAMS, Justice.

This is an appeal by Sohio Petroleum Company from an order of the Corporation Commission made on November 23, 1956, authorizing and permitting G. C. Parker to directionally drill his Vaughan No. 2 well located in the northeast quarter of the southeast quarter of the southeast quarter of sec. 12, Twp. 1 N., R. 3 W., Garvin County, Oklahoma, so as to bottom the same in the Oil Creek sand at a point approximately 186 feet north and 15 feet east of the surface location of the said well and to produce from said well the full allowable set for the other wells in the same pool.

It appears that by prior order, No. 30086, the Corporation Commission created 40-acre drilling and spacing units for the further development of the Oil Creek sand underlying the Eola field in Garvin County, Oklahoma, prescribing as the permitted well location any point within the square 10 acres in the center of such 40-acre spacing units. Parker owned an oil and gas lease covering the above described 40-acre tract of land, which tract was one of the 40-acre drilling and spacing units for Oil Creek development established by the above numbered prior order of the Commission. Thereafter, Parker commenced the drilling of a well, known as the Vaughan No. 2, for an Oil Creek sand test, at a location 335 feet south of his north line and 335 feet west of his east line, which location was in the extreme northeast corner of the square 10 acres in the center of such 40-acre tract.

Parker drilled his Vaughan No. 2 well to a total depth of 9,524 feet without encountering the Oil Creek sand or producing any oil or gas. Upon the advice of his geologist, Parker then plugged the well back to 8,600 feet, from which point he directionally drilled, or whipstocked, said well in a northerly direction some 81 feet and down to a depth of 9,133 feet. The whipstocked hole encountered some 135 feet of productive Oil Creek sand. Although the whipstocked hole was only 81 feet north of the original hole, the original hole had deviated in a northerly direction from the surface location some 105 feet, which deviation was apparently not intentional, so that the bottom of the whipstocked hole was actually located and producing oil from a point approximately

186 feet north and 15 feet east of the surface location of the well, and only 149 feet south of Sohio's lease line. Parker then filed application with the Corporation Commission for authority to directionally drill and complete such well and produce the same without allowable penalties.

Sohio had previously drilled an Oil Creek well in the 40 acres to the north, and it appeared at the hearing held on Parker's application and protested the granting thereof unless an allowable penalty were imposed upon the Parker well, to adjust the advantage Parker would obtain by lease boundary crowding and, as Sohio alleged, by having an Oil Creek well in a 40-acre spaced field without having 40 acres of productive Oil Creek sand.

After a hearing was had on the application, the Corporation Commission entered its findings and order, the pertinent parts of which are as follows:

"5. That the protestant Sohio Oil Company owns a lease covering the spacing unit to the north of the spacing unit here involved, and has completed its Sohio-Harold B-2 well drilled at a location in the northwest quarter northeast quarter southeast quarter of Sec. 12, T-1-N, R-3-W, Garvin County, Oklahoma, and producing from the Oil Creek sand. Said well is bottomed in a southerly direction at the approximate center of said 40-acre unit, same being 350 feet and a greater distance toward the applicant's lease than the applicant's well is off pattern toward protestant's lease line and well; that protestant's well has been producing and has enjoyed uncompensated drainage from the area normally allocated to applicant's well for a period of approximately a year and a half.

"6. That Protestant Sohio Oil Company appeared at the hearing and asked that the allowable for the Parker-Vaughan No. 2 be reduced; that it was applicant's position that there should be no reduction in the allowable; that there was no question raised as to applicant's right to directionally drill the well and produce at least a part of an allowable therefrom.

"7. That the applicant, G. C. Parker, testified that he contacted Sohio before he elected to request permission of the Corporation Commission to drill his Vaughan No. 2 well directionally and Sohio advised him that it had no objection thereto and would make no protest to the application. That relying upon this information, applicant filed this application rather than spend $50,000 more to drill his well 1,500 feet deeper where the Oil Creek sand would be expected. Further, that most of the wells in the field producing from the bromide formation are either off pattern or have deviated from the vertical and no production penalties have been ordered; that due to excessive cost it would take 10 years to pay out the Vaughan No. 2 well with a full allowable.

"8. That R. W. Biggert, a consulting geologist employed by applicant, testified that the Oil Creek sand was expected at a depth of 9300 feet, but that they hit an overturned fold instead, that they whipstocked the well to the northeast to prevent the unnecessary drilling of 1500 feet of hole; that in his opinion the entire 40-acres was underlain by productive Oil Creek sand formation, and that if said Vaughan No. 2 well had been drilled on down in the original hole for a depth of approximately 1,000 to 1,500 feet the Oil Creek sand formation would have been productive.

"9. That Robert R. Rhody, a geologist for the protestant, testified that a fault tending in a north-west south-east direction cut this unit so as to leave a maximum of 8 productive acres; that it was his recommendation that the well be penalized a minimum of 35% with a provision for a minimum allowable.

"10. That in interest of securing the greatest ultimate recovery of oil from the pool, the prevention of waste and the protection of correlative rights, this application should be granted giving applicant permission and authority to directionally drill his Vaughan No. 2 well to its present whipstocked location and to produce a full allowable therefrom."

The order then permitted and authorized Parker to directionally drill his Vaughan No. 2 well so as to bottom the same in the Oil Creek sand at a point approximately 186 feet north and 15 feet east of the surface location of said well and to produce from said well the allowable set for the other wells and in the pool.

Sohio has perfected this appeal from the foregoing order, and assigns as grounds therefor, that in entering the order the Commission disregarded the legislative mandate set forth in sub-paragraph "b", paragraph 87.1, Title 52 O.S.A., directing the Commission in orders granting authority to drill off pattern wells to adjust the allowable production from such off pattern wells in such manner as to protect the rights of offset owners; that the Commission's order is not supported by substantial evidence; and that the Commission's action was arbitrary and capricious and improperly favors one of the operators in the common source of supply involved.

Appellant's first argument is that the provisions of 52 O.S.1951 § 87.1(b) authorize the Commission to allow a well to be drilled off of the pattern provided by the spacing order in a spaced field, if the well is on the edge of a field, or if other circumstances indicate such action to be proper, but require that in the order granting such exception, the commission adjust the allowable upon such well; that the order appealed from authorizes such an exception, that is an off pattern well, but makes no provision adjusting the allowable therefrom, and that such order is therefore void because it does not follow the mandatory provisions of the statute. We do not so interpret either the statute or the order appealed from. The statute referred to does not require the commission to *reduce* the allowable production whenever an exception is granted, but requires the commission to *adjust* the allowable production for the spacing unit and to take such other action as may be necessary to protect the rights of interested parties. We have heretofore construed such statute in the case of Application of Anderson, 202 Okl. 422, 214 P.2d 896, 898. In the opinion in such case we said:

"In such cases, in order to encourage the drilling of such wells and the possible production of oil therefrom, the legislature enacted the law above referred to, and specifically authorized the Commission to make exception to the uniform spacing rules when wells were sought to be drilled upon the edge of any productive area, and to adjust the allowables granted to such wells. It did not prescribe any certain pattern to be followed by the Commission in making such exceptions or in adjusting the allowables in such cases, since the action of the Commission must necessarily be based upon the particular facts in each case. Therefore the making of such exceptions and the adjustment of the allowables in such cases was left to the discretion of the Commission, and its order should be by this court sustained, unless it is shown to be arbitrary and unreasonable and an abuse of the discretion so committed to the Commission."

Such statute was likewise involved in the case of Creslenn Oil Co. v. Corporation Commission, 206 Okl. 428, 244 P.2d 314, 315. The second paragraph of the syllabus in that case is as follows:

"Where under an order of the Corporation Commission applicants are permitted to drill a well on a location outside of a location previously established under orders of the Corporation Commission; and the Commission in granting the order limits the well to

90% of the allowable for wells in the pool in which the well is located, or 90% of the capacity of the well to produce, whichever is the lesser; and where the uncontroverted evidence establishes that the re-located well will not obtain any geological advantage, or cause any oil drainage from the adjacent land, the order cannot be sustained as it is not supported by substantial evidence as required by Article IX, Sec. 20 of the State Constitution."

■ It should be here noticed that in arguing that the statute requires the Commission to adjust the allowable whenever an exception is granted to the previously prescribed drilling locations, appellant treats the word "adjust" as if it were synonymous with the word "reduce", and in effect argues that the above cited statute requires the commission to *reduce* the allowable production whenever an exception is granted. Such of course is not the case. Had the legislature intended to require the Commission to reduce the allowable in any case in which an exception to the prescribed drilling pattern was made, it would have said so. The word "adjust" is defined in Webster's New International Dictionary, second edition, as meaning "to settle or arrange; to free from differences or discrepancies." The order appealed from certainly settled or arranged the allowable for the well in question, and there is therefore no merit in appellant's contention that the order is void because it contained no provision adjusting the allowable.

Since the Corporation Commission adjusted the allowable production for the well in question by finding and ordering that such allowable be set at the same allowable as that set for the other wells in the same pool, its order should be by this court sustained, unless it is shown to be arbitrary and unreasonable, and an abuse of the discretion committed to the commission. Application of Anderson, supra.

■ Appellant argues that the order appealed from is arbitrary and unreasonable, and an abuse of the discretion permitted to the commission, and in support of such contention argues that under the statute above cited, the Commission must reduce the allowable of an off pattern well unless there is a finding supported by substantial evidence that increased drainage of adjoining tracts will not occur by reason of the changed well location, and points out that no such finding was made here. Such argument is not exactly in accord with our holding in Creslenn Oil Co. v. Corporation Commission, supra, however, as we there held in effect that the Commission could not reduce the allowable for an off pattern well unless it found that increased drainage of adjoining tracts would occur by reason of the changed well location and such finding was supported by substantial evidence. In the case at bar expert testimony was presented to the effect that the change of location of the well in question, from the authorized location to the whipstocked location 186 feet north of the authorized location, would effect no material change in the drainage pattern of the well or the amount of drainage from adjacent lands, and the Commission was apparently of the opinion that no substantial increase in drainage of adjoining tracts would occur by reason of the changed well location. It is true that there was substantial evidence to the contrary, but under our limited power of review, we are not authorized to make a comparison of evidence introduced by the respective parties before the Commission, nor are we authorized to weigh the evidence to see whether the order of the Commission is in accord with the weight of the evidence. Creslenn Oil Co. v. Corporation Commission, supra. Under such circumstances, we cannot say that the order was improperly entered or that it did not protect the correlative rights of the interested parties or that it was arbitrary or unreasonable.

Order affirmed.

CORN, V. C. J., and DAVISON, HALLEY, JOHNSON, BLACKBIRD, JACKSON and CARLILE, JJ., concur.