Sarah M. SPAETH, William Kelly Cronkhite, Winnie May Howell and Walter Schneider, Appellants,

v.

CORPORATION COMMISSION of the State of Oklahoma, Union Oil Company of California, Ashland Oil, Inc. and Getty Oil Company, Appellees.

No. 49954.

Supreme Court of Oklahoma.

May 8, 1979.

As Corrected July 9, 1979.

Rehearing Denied July 20, 1979.

Robert J. Emery, Lytle, Soulé & Emery, Oklahoma City, for appellants.

H. B. Watson, Jr., Watson, McKenzie & Moricoli, Oklahoma City, for appellee Union Oil Co. of California.

C. Harold Thweatt, Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, for appellees Ashland Oil, Inc. and Getty Oil Co.

IRWIN, Vice Chief Justice.

Appellants, Sarah M. Spaeth and various other mineral owners, filed an application with the Corporation Commission for a modification of a previous order creating 640 acre drilling and spacing units within the common source of supply to permit the drilling of an additional well to protect appellants from drainage and consequent prejudice of their correlative rights.[1] Union Oil Company, the well operator in the affected drilling and spacing unit, Ashland Oil Company, Inc., and Getty Oil Company, adjoining operators, intervened as contestants to the application. By Order No. 122,-300, Commission denied appellants' requested modification, and they appealed.

Union first contends that appellants had no standing to request the modification. 52 O.S. 1971, § 87.1(a) authorizes the Commission to enter an order after hearing upon petition of any person owning an interest in minerals embraced within the common source of supply or the right to drill upon lands embraced within the common source of supply. *Texas Oil and Gas Corporation v. Rein*, Okl., 534 P.2d 1277 (1975). Also, 52 O.S. 1971, § 112, provides in part:

> "Any person affected by any Legislative or administrative order of the Commission shall have the right at any time to apply to the Commission to repeal, amend, modify or supplement the same * * *."

Appellants not only owned an interest in the minerals involved but had been affected by the Commission's order establishing the drilling unit in the common source of supply. We hold appellants had standing to seek the relief requested. Whether they are entitled to any relief is an entirely different matter.

The record discloses a common source of supply for natural gas in the Morrow formation, underlying part of Township 17, Range 11 West, Blaine County, Oklahoma. By Order No. 59,245, entered June 17, 1965, the Commission created 640 acre drilling and spacing units for the Morrow underlying Sections 10 through 15 and 22 through 24 of Township 17. This order was entered on the strength of information obtained from a producing well drilled in Section 14. By Order No. 61,106, entered December 28, 1965, the Commission extended Order No. 59,245 to include Sections 1 through 5, 8, 9, 16, 17, 20, 21, and 25 through 29 of Township 17. Evidently, Order No. 61,106 was entered on the strength of information obtained from the well in Section 14 as there was no additional development in the area between the June and December order.

In 1966 and 1967 wells were drilled and completed in Sections 3, 4, 9 and 10. Appellants are mineral owners of acreage underlying Section 4. The well in Section 4 is, relatively speaking, a poor well. Testimony on behalf of appellants was that past production and potential future recovery from adjoining wells east, southeast and south of Section 4 was and would continue to be many times greater than in Section 4. Appellants' expert believed that porosity factors are such in the common source of supply that these better producing wells have been and will continue to drain gas from under Section 4. That testimony was based on data resulting from the four wells drilled since the last order.

The Commission, in denying appellants' application for modification, made the following findings:

---

[1]. Appellants sought authority to drill an additional well on the drilling and spacing unit and did not seek two allowables, but only a single allowable.

"6. That the evidence introduced did not establish a substantial change of conditions or a substantial change of knowledge of conditions since Order No. 61,106 was entered. * * * The evidence fails to establish the violation of the correlative rights of the applicants or of the owners of the oil and gas rights in and under the unit in question * * *."

A spacing order which has become final may be modified only upon substantial evidence which shows a change in conditions, or a change in knowledge of conditions, arising since the last order. *Phillips Petroleum Co. v. Corporation Commission*, Okl., 461 P.2d 597 (1969). As in other Commission proceedings, the substantial evidence rule controls in appeals involving oil and gas conservation orders. *French v. Champlin Exploration, Inc.*, Okl., 534 P.2d 1302 (1975). This Court had on numerous occasions repeated the definition of "substantial evidence". See *Central Oklahoma Freight Lines v. Corporation Commission*, Okl., 484 P.2d 877 (1971).

Virtually all of the evidence before the Commission was presented by appellants. Based upon data obtained as a result of the wells in Sections 3, 4, 9 and 10, their expert testified that the wells in Sections 3, 9 and 10 were draining Section 4. He said that we now have information involving the reservoir that we did not have when the first orders were entered; and that the changes in knowledge and conditions are substantial changes. This expert was of the opinion that the well in Section 4 was not capable of protecting Section 4 from drainage from the wells in Sections 3, 9 and 10. In order to stop the drainage, he was of the opinion an additional well had to be drilled in Section 4. The expert's opinion was supported by technical data. Appellees offered no expert testimony but did cross-examine appellants' witness on all matters. Notwithstanding this lengthy questioning, appellants' expert testimony remained consistent. We can only conclude there is no substantial evidence that will support Commission's finding that the "evidence introduced did not establish a substantial change

of conditions or a substantial change of knowledge of conditions" since the previous spacing order, and its finding that "the evidence fails to establish the violation of the correlative rights of the applicants or of the owners of the oil and gas rights in and under the unit in question." Appellants are entitled to a reversal of the Commission's order.

Appellants suggest that under 52 O.S. 1971, § 112, this Court on appeal, "may itself make the order which the Commission should have made". Section 112 was enacted in 1933 and at that time the Supreme Court had "jurisdiction to review, reverse, correct or annul any action of the Commission within the scope of its authority * *." See Oklahoma Constitution, 1931, § 13605. Section 13605 was amended in 1941, and Article 9, § 20 of the Oklahoma Constitution now provides that the Supreme Court "shall enter judgment, either affirming or reversing the order of the Commission appealed from."

Order reversed.

LAVENDER, C. J., and WILLIAMS, HODGES, BARNES, SIMMS, HARGRAVE and OPALA, JJ., concur.

DOOLIN, J., concurs in part, and dissents in part.

DOOLIN, Justice, concurring in part, dissenting in part:

I concur with the majority in its holding appellants have standing to request a modification of the involved order. I also concur there is no substantial evidence to support Commission's order. But, I cannot let the obiter dicta in the final paragraph of the majority's opinion go unchallenged.

Article 9 § 20 of the Constitution of the State of Oklahoma does indeed state that the Supreme Court on appeal "shall enter judgment, either affirming or reversing the order of the Commission appealed from." I cannot agree this proviso does not permit this court to include, in our reversal, an order of remand or modification.

The Legislature must function within constitutional limitations, and it is presumed that it acts with a conscious regard thereof. Thus in interpreting Art. 9 § 20, legislative construction is highly persuasive.[1]

Not too long ago 52 O.S. 1971 § 113 was enacted by our Legislature. This statute provides in pertinent part, reference certain appeals from the Corporation Commission:

". . .

On such appeal the Supreme Court shall have power to determine the validity, the reasonableness and justice of such order, rule or regulation, and should the Court find from the record that the order, rule, or regulation appealed from is incorrect, unreasonable, unjust or insufficient in any particular *it shall amend, modify, or supplement such order*, rule, or regulation so as to make the same correct, reasonable, just or sufficient, or *shall substitute therefor such order*, rule, or regulation as in the Court's opinion is warranted by the record, is reasonable and just, and will effect the purposes and intent of Sections 84–135 of this Title. On such appeals no order, rule or regulation shall be reversed and remanded to the Commission for a new trial thereon or for the taking of additional testimony unless the Court shall find that the evidence introduced before the Commission is insufficient to enable the Court to determine and make a proper order, rule, or regulation or that the party appealing did not have lawful notice of the hearing before the Commission, or that the Commission refused to receive competent evidence offered by the party appealing, which, if true, would leave the order, rule, or regulation appealed from without substantial basis in fact.

. . ." (Emphasis supplied).

We must presume our Legislature in enacting this statute was aware of Art. 9 § 20 and construed it to allow the type review by this court provided for in the statute:

Further § 112 is even more explicit:

"Any person affected by any Legislative or administrative order of the Commission shall have the right at any time to apply to the Commission to repeal, amend, modify, or supplement the same. Such application shall be in writing and shall be heard as expeditiously as possible after notice of the hearing thereon shall have been given in the manner provided by Section 14 of this Act. An appeal shall lie to the Supreme Court from any order made by the Commission in any such proceedings or from the refusal of the Commission to make any order petitioned for therein, in the same manner and within the same time in which other appeals are authorized to be taken by the provisions of this Act, and, on any such appeal, the Supreme Court may affirm the order of the Commission, or the Commission's action in refusing to make the order petitioned for, *or may itself make the order which the Commission should have made*, or remand the cause to the Commission with directions to make such order as the Supreme Court may determine should have been made." (Emphasis supplied).

Although Art. 9 § 20 became law after § 112 was enacted, § 112 has not been repealed. Further repeal by implication is not favored and an earlier statute will not be repealed unless there is irreconcilable conflict.[2] In my opinion Art. 9 § 20 was not intended to repeal § 112 nor do they conflict. Neither do I believe § 113 violates Art. 9 § 20. The power of this Court to reverse and remand a decision of the Corporation Commission encompasses the right to modify said order and make it that which Commission should have made.

I am authorized to state that Justice Hodges and Justice Barnes concur in the views herein expressed.

---

1. *State v. Grand River Dam Authority*, 195 Okl. 8, 154 P.2d 946 (1945).

2. *Gulf Oil Co. v. Woodson*, 505 P.2d 484 (Okl. 1972).