**PETROLEUM RESERVE CORPORATION, Appellee and Cross-Appellant,**

v.

**Emiel E. DIERKSEN and Mary Dierksen, Appellants and Cross-Appellees.**

**No. 53009.**

Supreme Court of Oklahoma.

Jan. 20, 1981.

---

**17.** Cal.Civ.Code §§ 3097, 3114, 3160.

**18.** Cal.Code Civ.Proc. § 526.

**19.** Cal.Code Civ.Proc. § 527.

**20.** Cal.Code Civ.Proc. § 1060.

Lawrence T. Chambers, Jr., Kevin C.
Coutant, Richard P. Hix, Doerner, Stuart,

Saunders, Daniel & Anderson, Tulsa, for appellee and cross-appellant.

Mitchell, DeClerck, Cox, Halstead, Lahman & Shaw by James R. Cox, Enid, for appellants and cross-appellees.

DOOLIN, Justice:

Does oil and gas production from a well inside a spacing unit extend the primary lease period on land found within that same spacing unit but upon which the well is not drilled? We answer in the affirmative.

On April 26, 1975 defendants Dierksens (lessors) gave an oil and gas lease on a quarter section of land to plaintiff Petroleum Reserve Corporation (lessee). The primary term was three years providing for delay rentals due after one year if no drilling had begun. In 1964 the quarter section had been included in a 640-acre spacing unit for gas and gas condensate from the Mississippi Formation by an order of the Corporation Commission. In October of 1975, lessee participated in an oil and gas well which was drilled within the 640-unit spacing unit but not on lessors' property. That well produced oil and gas, so lessee made no delay rental payments to the lessors on the first anniversary date in April 1976. The lease required lessee to initiate drilling within one year or pay delay rentals. In July 1976, the spacing unit order was terminated by the Corporation Commission upon request by the lessors. The trial court found the lease was a valid lease and gave the lessee seven months to begin drilling operations.

Both parties appeal.

■ Lessors' argument covers several points. They note that the lessee at no time filed a written unit designation in Major County to pool their land within the 640-acre unit. This was a requirement of the oil and gas lease, but the trial court found such failure to be "of no consequence" and added "there is no evidence that defendants (lessors) ever checked these records, or relied upon them. The filing or non-filing of a unit designation would have no effect on the interest of defendants, for their rights were fixed by law and the order of the Corporation Commission." The trial court said the requirement for a unit designation was for "housekeeping purposes" only and was not intended to cause a forfeiture of a lease for failure to file such unit designation.

I

We must concur with the trial court's finding. The lease language does require filing of unit designation: "Lessee shall file written unit designations in the county in which the leased premises are located." Although we view such a requirement as notice to concerned parties that the land in question has been included in a specific unit for oil and gas production, there was no evidence that lessors relied to their detriment on the lack of such a notice, the filing of a written unit designation in the County. We find that failure to meet that requirement under the facts and circumstances of this case cannot serve to forfeit the lease.

Lessors next argue there should be a distinction between "spacing" and "pooling," that while the land in question was included in a 1964 "spacing" order, there was never an effort to "pool" the land into that unit for production purposes, by voluntarily or forced pooling. We deal with this point in a later portion of the opinion.

The Commission order itself provides for a "drilling and spacing unit," and that "all royalty interests within any spacing unit shall be communitized and each royalty owner within any unit shall participate in the royalty from the well drilled thereon in the relation that the acreage owned by him bears to the total acreage in the unit." (Paragraph 7, page 4, Corporation Commission Order No. 55,060).

■ The lease specifies that the lessee must comply with "all Federal and State Laws, Executive Orders, Rules and Regulations ..." However, lessee contends that such language requires it to comply with the 640-acre spacing order by the Corporation Commission and therefore it could not drill a separate well on lessors' land while the spacing unit was in effect.

There is another aspect. The Corporation Commission Order was for gas and gas con-

densate. No mention was made of oil. The lease in question covers both gas *and* oil. Could lessee therefore by required under the lease to drill for oil although restrained by the spacing Order from searching for gas? The well lessee relies upon to extend its primary lease discovered both gas and oil. The lessors were mailed royalty checks for their portion of the gas and oil royalties. They cashed the check for oil but did not cash the check for gas.

Lessee argues a case, on "all fours" with our fact situation, is *Sunray DX Oil Company v. Cole, 461 P.2d 305 (Okl.1967)*. The facts are indeed similar. In *Cole*, the lessors attempted to terminate an oil and gas lease held by the lessees. The lease was dated June 13, 1962. A well was completed in October 1962, on nearby land. In March 1963, the Corporation Commission ordered a 320-acre drilling and spacing unit for gas and gas condensate from the producing formation. The 320 acres included some, but not all, of the leased land in question, and also included the producing well. The parties to the lease had stricken from the lease a clause requiring the lease to be in conformance with state and federal rules and regulations. This Court ruled that the lease still must conform to state rules and regulations and that the producing well within the 320-acre designated unit relieved the lessee from paying delay rentals. Thus the lease was still in full force and effect. The syllabus of the case synthesized the holding this way:

> "Under a clause in an oil and gas lease wherein the lessee obligates himself to either commence the drilling of an oil or gas well or pay delay rentals in lieu thereof, the drilling and completion of a successful commercial gas well on lands other than the leased premises, but within the same well spacing unit, is a compliance with such provision and serves to relieve the lessee from paying any further delay rentals."

If anything, the present fact situation presents a stronger argument for the above proposition than the facts presented in *Cole*. In the present case *all* the leased land was included in the spacing unit, not just a portion, and the clause making the lease subject to state rules and regulations was left intact and not stricken as in *Cole*. The spacing unit in the instant case was in effect before the lease was entered into, not established after the lease as in *Cole*.

*Cole* also answers the question of whether lessee lost its right to drill for oil, as the spacing unit was only for gas. It held lessee did not lose his right in that case.

■ Lessors admit the close similarity in the two fact situations (*Cole* and the present case) but urge this Court to draw the distinction between "spacing" orders and "pooling" orders, contending that this distinction has been ignored in all previous decisions by this Court. They argue that although the Corporation Commission placed the leased land in a 640-acre "spacing unit," there never has been an order "pooling" the leased land with other mineral interests into an established unit and therefore lessee has forfeited its lease.

We think the 10th Circuit Court of Appeals has succinctly and properly differentiated the meaning and effect of pooling and spacing orders in *Whitaker v. Texaco, Inc., 283 F.2d 169, 172*:

> "Under Oklahoma law, upon entry of a spacing order by Oklahoma Corporation Commission, royalty interests arising from land covered by such order are pooled by operation of law, but working interests therein are pooled only upon a voluntary agreement or upon a separate commission forcing unitization."

■ 52 O.S. 1980 Supp. § 87.1(e) provides a voluntary pooling agreement or contract is fully as binding as a forced pooling order of the Corporation Commission.[1] The lessors cast no doubt on the existence of such an agreement under § 87.1(e). Lessors' effort and challenge is directed solely to the failure to file such pooling agreement as a written unit designation in the County. The leased property was "pooled" when les-

1. "... the owners thereof may validly pool their interests and develop their lands as a unit ..." 52 O.S.Supp. 1980 § 87.1(e).

see voluntarily joined with other mineral lease holders within the spacing unit to develop the producing well.

## II

■ Lessee contends the trial court erred when it ignored a stipulation by the parties and gave lessee seven months to commence the drilling of a well. The stipulation agreed that lessee would have a "reasonable time" in which to start the well. Lessee contends if the seven months runs from the date of the trial court judgment, it will expire before this appeal can be completed. While the seven months time limit imposed by trial court would, of course, have been stayed pending this appeal and not begin to run until mandate was issued in this appeal, we agree with the lessee that the stipulation of parties should govern. We find, therefore, that lessee shall have a "reasonable time" after mandate issues in this appeal in which to commence drilling operations, as contemplated by the parties in their stipulation.

AFFIRMED IN PART, REVERSED IN PART.

All the Justices concur.