**SAMSON RESOURCES COMPANY, Petitioner,**

v.

**CORPORATION COMMISSION of the State of Oklahoma; the Honorable Hamp Baker, Chairman; the Honorable Norma Eagleton, Vice-Chairman; and the Honorable James B. Townsend, Commissioner, Respondents.**

No. 60855.

Supreme Court of Oklahoma.

April 23, 1985.

Rehearing Denied July 25, 1985.

---

Brown & Lockhart by Gordon F. Brown and James H. Lockhart, Oklahoma City, for petitioner.

Watson & McKenzie by Richard K. Books and Sharon L. Taylor, Oklahoma City, for respondents Tenneco Oil Co., and An-Son Corp.

Gretchen P. Hoover, Deputy Gen. Counsel, and Leslie Wilson Pepper, Asst. Gen. Counsel, Oklahoma City, for respondent Oklahoma Corp. Com'n.

LAVENDER, Justice:

This Court is once again called upon to enquire into the question of the scope of respondent Oklahoma Corporation Commission's jurisdiction over matters related to the development of oil and gas drilling operations. Petitioner, Samson Resources Company, contends that the Commission is attempting to exercise jurisdiction over an area of private contractual relationships. Respondents Commission and Tenneco Oil Company argue that the matter is within the Commission's jurisdiction as it involves the shibboleth "correlative rights."

This dispute came before the Commission on the application of respondent Tenneco seeking an order changing operator in the 640 acre drilling and spacing unit encompassing all of Section 15, Township 14 North, Range 26 West, Roger Mills County, Oklahoma. The spacing unit had been created by a prior Commission order. Tenneco's application alleged that a well had been drilled on the unit pursuant to a voluntary agreement for development entered into by all of those owning the right to drill in the unit.[1] Tenneco also alleged that petitioner, the unit well operator under the voluntary agreement, had operated the well to the detriment of the other interest holders. The application requested that the Commission designate Tenneco as unit operator, displacing petitioner.

A hearing was set on Tenneco's application. Both Tenneco and petitioner presented arguments at that hearing concerning the Commission's jurisdiction over the matter. The trial examiner referred the question to the Commissioners, who heard the arguments on the same day. Following this hearing the Commission issued an order finding that it had jurisdiction of the matter and remanding the cause to the trial examiner for hearing. On the day prior to this hearing, petitioner filed the present application and petition for writ in this

---

1. As will be discussed infra. Tenneco, at the time of the agreement, had contracted out its right to drill to petitioner and was thus not a party to the development agreement.

Court. One day of hearing was held in the Commission prior to this Court's issuance of an order staying proceedings below pending the decision on the application and petition for writ.

The transcripts of the hearings in this matter before the Commission and the exhibits introduced have been provided to this Court as part of petitioner's original application and supplemental statement of facts. These exhibits include the documents establishing a contractual relationship between respondent Tenneco and petitioner regarding the development of the unit. Petitioner contends that this relationship is the basis of the dispute between the parties. Tenneco contends that, regardless of the relationship, petitioner's actions affect "correlative rights" and thus bring the matter within Commission jurisdiction.

Tenneco alleges that petitioner has a greater interest in production from a well located in a unitized section also operated by petitioner which offsets Section 15. And that, as a result of this greater interest, petitioner has not operated the Section 15 unit well so as to obtain maximum production. Tenneco states that, as a result, the well in the offsetting section, which produces from the same formation as the Section 15 unit well, has drained possible production from Section 15, and that this necessitates the requested change of operators.

## I.

In the recent case of *Tenneco Oil Co. v. El Paso Natural Gas Co.*,[2] recognizing the limited nature of the Commission's jurisdiction,[3] we stated that the function to be served by the Commission under the statutes concerning oil and gas conservation,[4] under which respondents now claim jurisdiction for the Commission, was to protect public rights in the development and production of oil and gas.[5] This Court went on to state:[6]

This is not to say that the rights to produce the designated quantity of hydrocarbons from the well and the division thereof, the public interest, and the owner-operator interests are not the proper subject of a private contract. The limitation being *always omnipresent* is that no private contract or operating agreement may cause or grant a license to commit waste, or diminish correlative rights, control of which is exclusively within power of Corporation Commission. The Corporation Commission is a tribunal of limited jurisdiction, *Burmah Oil & Gas Company v. Corporation Commission* [541 P.2d 834 (Okla.1975)], supra, and *Kingwood Oil Company v. Hall-Jones* [396 P.2d 510 (Okla.1964)], supra. *Respective rights and obligations of parties are to be determined by the district court, Southern Union Production Company v. Corporation Commission,* 465 P.2d 454 (Okla.1970). (Emphasis added) (Footnotes omitted)

In *Tenneco* we stated that the parties to a Commission forced pooling order could flesh out that arrangement through contract. And that the parties' rights and obligations under the contract would be a matter for determination in the district courts, the proper forum for questions dealing with the respective rights of private parties.

The present case appears, even more clearly than *Tenneco*, to involve a question of private rights. The unit in this case had been developed under the auspices of a voluntary pooling agreement, clearly sanctioned by the terms of 52 O.S. 1981 § 87.1(e). Certain rights and obligations

---

2. 687 P.2d 1049 (Okla.1984).

3. See also *Merritt v. Corporation Commission,* 438 P.2d 495 (Okla.1968), in which we stated in the Court's first syllabus:

   The Corporation Commission is a tribunal of limited jurisdiction and has only such jurisdiction and authority as is expressly or by necessary implication conferred upon it by the Constitution and statutes of this state.

4. 52 O.S.1981 §§ 81, et seq.

5. 687 P.2d at 1052.

6. 687 P.2d at 1053.

arose between the parties to this agreement.

A contractual relationship also arose between petitioner and respondent Tenneco under which Tenneco "farmed out" its interest in the unit to petitioner on condition that petitioner drill and operate the unit well. Part of the terms of this "farm out" were that, on pay out of the well, Tenneco would convert its overriding royalty interest reserved under the "farm out" to a working interest in one-half of the leases assigned to petitioner under the contract. Tenneco also agreed that at payout and conversion it would enter into an operating agreement recognizing petitioner as the unit operator.

■ Now, respondent Tenneco takes the position, shared by respondent Commission, that it is within the Corporation Commission's jurisdiction to override these private contractual relationships on the assertion that the action of one of the parties has affected "correlative rights." The recognized power and responsibility of the Commission to act to protect correlative rights must be interpreted, in light of our holding in *Tenneco*, to be confined to situations in which a conflict exists which actually affects such rights within a common source of supply and thus affects the public interest in the protection of production from that source as a whole. This Court adopted a definition of correlative rights in *Kingwood Oil Co. v. Corporation Commission:*[7]

> The term "correlative rights" has been defined as a convenient method of "indicating that each owner of land in a common source of supply of oil and gas has legal privileges as against other owners of land therein to take oil and gas therefrom by lawful operations conducted on his own land, limited, however, by duties to other owners not to injure the source of supply and by duties not to take an

undue proportion of the oil and gas". Summers, Oil and Gas, Vol. 1, Sec. 63. In *United Petroleum Exploration, Inc. v. Premier Resources, Ltd.,*[8] the United States District Court added a refinement in interpreting our definition which we have accepted in *Tenneco.*[9]

> From this it can be seen that correlative rights are those rights which one owner possesses in a common source of supply in relation to those rights possessed by other owners in the same common source of supply. At this point, it must be emphasized that a common source of supply in which the owners of mineral interests possess correlative rights is the underlying geological strata from which the oil and gas is produced, rather than the well through which the oil and gas is reduced to possession. See, 52 Okla. Stat.1971 § 86.1(c).

It can thus be seen that the power to protect "correlative rights" is limited by definition and by the terms of the statute under which the Commission claims jurisdiction; 52 O.S. 1981 § 87.1. Under this statute the Commission properly exercises its power to protect correlative rights by the establishment of spacing units and the setting of allowable production. This allows protection of the public interest in orderly development and production of resources and the prevention of the drilling of unnecessary wells. The setting of allowables on production insures that no one party or parties take an undue proportion of the oil and gas.[10]

Section 87.1 provides two other avenues for the exercise of Commission jurisdiction over the public interest in correlative rights. To prevent drainage from offsetting production the Commission may allow additional well locations in a spacing unit. To prevent drainage and the concomitant waste occurring in a unit in which interest owners are not able to come to terms regarding voluntary development, the Com-

7. 396 P.2d 1008, 1010 (Okla.1964).

8. 511 F.Supp. 127 (W.D.Okla.1980).

9. 687 P.2d at 1053 (footnote 11).

10. See *Corporation Commission v. Phillips Petroleum Co.,* 536 P.2d 1284, 1290, 1291 (Okla.1975).

mission is empowered, upon proper application, to order those interests pooled. This allows an orderly development of the common source of supply. Aside from the recognized power to monitor certain terms and conditions of the contract imposed on the parties through a forced pooling order,[11] no other powers to protect correlative rights are granted or implied by this statute.[12]

■ The relief requested by Tenneco in this case, the replacement of an operator designated under a voluntary pooling agreement in order to protect "correlative rights," is clearly beyond the Commission's conferred jurisdiction, as it concerns a dispute between private parties in which the public interest in correlative rights is not involved.[13] The basis for Tenneco's argument does not truly concern the disproportionate taking of gas from a common source of supply, as it has attempted to so characterize its argument. It appears from the materials before this Court that both wells in question being operated by petitioner are being produced within the allowables previously set by the Commission. As previously discussed, the setting of allowables in this instance is the proper Commission avenue to insure that no single party takes an undue share of production from a common source of supply.

Tenneco's assertions, when reduced to essence, allege that petitioner is violating a perceived duty to operate the Section 15 unit in a good faith manner so as to achieve maximum benefits for all interest holders in the unit. As such, the purely private interest nature of the conflict is apparent. The resolution of such a conflict is clearly

beyond the jurisdiction of the Commission. Therefore, the attempted exercise of jurisdiction by the Commission in this case must be prohibited.

## II.

■ The lack of jurisdiction of this matter on the part of the Commission, however, does not preclude Tenneco from seeking relief in the proper forum. We have previously held that the status of unit operator confers a duty to operate the leaseholds as a unit and to safeguard the correlative rights of the various interest holders.[14] Therefore, just as a mineral lessor has a right to enforce a lessee's implied covenant to develop a lease as a prudent operator, which includes a duty to protect against drainage by the lessee's other operations,[15] an interest holder in a unitized section has a right to enforce the unit operator's duty to conduct operations as a prudent operator.

However, the type of questions presented in an action of this nature; the relationship of the parties; their duties; their rights and obligations; and the existence of liability for the breach of such duties, are matters particularly within the province of the district courts. As the Commission lacks the power to entertain a suit for damages,[16] the seeking of relief in that forum would be not efficacious.

## III.

Original jurisdiction assumed. Writ of prohibition issued to prevent any further attempt by the Commission to exercise jurisdiction over cause C.D. No. 105048 regarding Tenneco's application to be named

**11.** See *Amarex, Inc. v. Baker,* 655 P.2d 1040, 1045 (Okla.1982).

**12.** See *Merritt v. Corporation Commission,* supra, at note 3.

**13.** See *Southern Union Production Co. v. Corporation Commission,* 465 P.2d 454, 458 (Okla. 1970), where we stated:
> We have held that the Corporation Commission is without authority to hear and determine disputes between two or more private persons or entities in which the public inter-

est is not involved. *Gibson v. Elmore City Telephone Co.* (1966), Okl., 411 P.2d 551.

**14.** *Crest Resources and Exploration Corporation v. Corporation Commission,* 617 P.2d 215, 218 (Okla.1980).

**15.** See *Dixon v. Anadarko Production Co.,* 505 P.2d 1394 (Okla.1972).

**16.** *Texas Oil and Gas Corporation v. Rein,* 534 P.2d 1277, 1279 (Okla.1974); *Kingwood Oil Co. v. Hall-Jones Oil Corp.,* 396 P.2d 510, 513 (Okla. 1964).

unit operator of the Guenzel No. 1–15 Well in Section 15, Township 14 North, Range 26 West, Roger Mills County, Oklahoma.

SIMMS, C.J., DOOLIN, V.C.J., and HARGRAVE, WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.

HODGES and OPALA, JJ., dissent.

OPALA, Justice, with whom HODGES, Justice, joins, dissenting.

The dispositive issue in this case is: May the Corporation Commission [Commission] decide a controversy between a working interest owner and a well operator who was appointed under a voluntary pooling agreement to which the working interest owner was not a party? The court's decision places the dispute beyond the jurisdiction of the Commission and within the cognizance of the district court. Because the controversy calls for an exercise of regulatory power over correlative rights of mineral, royalty and working interest owners within a spacing unit established by the Commission, and the aggrieved party had not entered into the voluntary pooling agreement under which the well operator in question manages production, I dissent from today's pronouncement.

## I

## THE DISPUTE

The dispute focuses on Samson's [petitioner's] operation of a well drilled within a Commission-created spacing unit [the Guenzel well] under authority of a voluntary pooling agreement. Tenneco [respondent] contended that because of Samson's greater financial interest in a less-productive adjoining well [the Abraham well], Samson was operating that well at higher profit and to the detriment of the superior-capacity Guenzel well, thus draining the common source of supply and injuring correlative rights of working interest owners, royalty owners and lessors within the spac-

ing unit. Samson has a twenty-five percent interest in the Abraham well, but none at all in the Guenzel well. Urging that this ownership pattern had led Samson to adopt production methods injurious to Tenneco and to other interest holders, Tenneco invoked the Commission's power to determine whether correlative rights of owners were being harmed under Samson's management; and if so, it asked that, in order to avoid waste and to protect the correlative rights of all interest owners, Samson be removed as operator and Tenneco substituted in its place.

Samson couched its counterargument in terms of private contract, contending that the dispute could not involve correlative rights because it arose under agreements among the parties. Samson further argued that the Commission was powerless to appoint an operator for a well drilled under a *voluntary* pooling agreement.

The agreements to be considered are: (1) a voluntary pooling agreement designating Samson as operator, signed by *most* of the working interest owners *but not* by Tenneco; and (2) a farmout agreement between Tenneco and Samson. The latter agreement farmed out Tenneco's acreage to Samson, assigning to it interests in Tenneco's oil-and-gas leases; reserved an overriding royalty interest (convertible to a working interest after payout); provided that, *on payout, Tenneco would execute* a "joint operating agreement" (and designate Samson as operator) and would abide by certain provisions for replacement of the unit operator. Tenneco never executed the post-payout joint operating agreement.

Looking solely to the agreements, Samson now contends that this is merely a private dispute which focuses on which party should "frac"[1] the Guenzel well, and that its obligation to the interest owners does not fall under the public-interest principle of correlative rights. According to this argument, if no public interest is involved, any possible violation of the agree-

---

1. The term "frac" is used in the oil-field parlance. It is a corrupt form of the verb "to fracture". The scenario that unfolded ascribes the drainage of the Guenzel well to Samson's

"fracing" of the Abraham well. Both Samson and Tenneco want to take charge of the Guenzel fracing operation.

ments would come within the district court's, not the Commission's, power to decide.

Samson posited below that Tenneco's *sole* remedy before the commission, in the event of drainage, was to seek adjustment of allowables within the common source of supply under 52 O.S. 1981 § 87.1(a).[2] The section Samson invoked authorizes the Commission to "take such other action as may be necessary to protect the rights of interested parties...." Hence, adjustment of allowables (which is not a mandatory measure), does not preclude the Commission from effecting a change of operator— the remedy Tenneco was seeking. When the Commission ruled it had jurisdiction and began hearing evidence, Samson sought a writ in this case to halt further action. This court then granted a temporary stay of proceedings before the Commission pending a resolution of the jurisdictional question.

## II

### CORPORATION COMMISSION JURISDICTION

The outer limit of the Commission's cognizance in the exercise of its regulatory power has been the subject of continuing controversy in the legal community and scrutiny by this court.[3] Statutory enactments endow the Commission with specific authority over production and conservation of oil and gas.[4] Involuntary pooling of mineral interests, when necessary to prevent waste and to protect the correlative rights of mineral owners, is well established as a valid exercise of state police power in conserving natural resources.[5] The Commission may lawfully apply its power in regulating the drilling of wells within a common source of oil-and-gas supply and in distributing production among the mineral owners.[6] The legislature's authority to enact statutes in the exercise of state police powers is a recognized part of the law in existence whenever a contract is executed. In contemplation of law these statutes become incorporated as a part of any specific contract.[7]

The Commission has exclusive authority to regulate oil-and-gas conservation and to oversee the drilling and operation of wells.[8] It may confer operator status within the unit of its creation which cannot later be transferred by private contract, but only

2. The terms of 52 O.S. 1981 § 87.1(a) provide in pertinent part:
"To prevent ... the various types of waste of oil or gas prohibited by statute, ... or to protect ... the correlative rights of interested parties, the Commission, ... shall have the power to establish well spacing and drilling units ... covering any common source of supply, ... provided further that the Commission shall adjust the allowable production within said common source of supply, ... and take such other action as may be necessary to protect the rights of interested parties...."

3. See, *Tenneco Oil Co. v. El Paso Natural Gas Co.,* Okl., 687 P.2d 1049 [1984] (Opala, J., dissenting—see footnote 4); see also, Barnes, Interpretation of Corporation Commission Orders: The Dichotomous Court/Agency Jurisdiction, VIII Okla.City L.Rev. 311 [1983]; Chatfield, Subject Matter Jurisdiction of the Oklahoma Corporation Commission: *Tenneco Oil Co. v. El Paso Natural Gas Co.,* 19 Tulsa L.J. 465 [1984]; Hart, Interpreting Corporation Commission Orders— Should the Commission be a Spectator or a Player? 48 Okl.B.J. 1343 [1977].

4. 17 O.S.1981 §§ 51, 52; 52 O.S.1981 §§ 81 through 287.15.

5. 52 O.S.1981 § 87.1; *Anderson v. Corporation Comm'n.,* Okl., 327 P.2d 699, 702, 703 [1958]; *Wakefield v. State,* Okl., 306 P.2d 305, 308 [1957]; *Crest Resources v. Corporation Comm'n.,* Okl., 617 P.2d 215, 217 [1980]; *Miller v. Corporation Comm'n.,* Okl., 635 P.2d 1006, 1007 [1981].

6. *Patterson v. Stanolind Oil & Gas Co.,* 182 Okl. 155, 77 P.2d 83, 89 [1938], appeal dismissed, 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231 [1939]; *Ward v. Corporation Comm'n.,* Okl., 501 P.2d 503, 508 [1972]; *Helmerich & Payne, Inc. v. Corporation Comm'n.,* Okl., 532 P.2d 419, 422 [1975].

7. *Sunray DX Oil Co. v. Cole,* Okl., 461 P.2d 305, 309 [1969], cert. denied 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183 [1969].

8. 17 O.S.1981 § 52; *Stipe v. Theus,* Okl., 603 P.2d 347, 349 [1979].

upon approval of the Commission after due notice and adversary hearing.[9] On entry of a drilling and spacing unit order, all royalty interests within the unit become pooled as a matter of law, while working interests are pooled either by voluntary agreement or by a Commission-imposed order.[10] Lessees and other interest owners in a drilling and spacing unit share in production *as of the time the unit is established.*[11] This is so because, on commencement of production, there is immediate drainage toward the producing unit well from areas where the owners are legally unable to guard against its occurrence. The *purpose* of involuntary pooling is to protect and compensate the owners within a unit for production they themselves may not seek or achieve.[12]

The Commission's regulatory power to prevent waste and protect correlative rights continues beyond the establishment of a drilling and spacing unit under circumstances that may result in the drilling of additional wells,[13] compulsory pooling,[14] and the adjustment of allowables.[15] The Commission may allow the drilling of addi-tional wells within a unit. This demonstrates its authority to protect owners within one unit from action by others within another unit.[16] If there had been a forced pooling of the interests here involved, no question would have arisen as to the presence of the Commission's authority.[17]

## III

## VOLUNTARY v. INVOLUNTARY POOLING AGREEMENTS: THEIR EFFECT ON CORRELATIVE RIGHTS

Samson rests its argument on the voluntary nature of the pooling agreement, maintaining that voluntariness of the agreement impressed the contracts with a "private" nature, as distinguished from a "public" character underlying the statutory language of "waste" and "correlative rights". This is a circular argument which begs the question and further clouds the problem of dichotomous court/agency jurisdiction which this court is called upon to resolve with increasing frequency.[18]

**9.** *Crest Resources v. Corporation Comm'n., supra* note 5 at 217 and 218.

**10.** *Petroleum Reserve Corp. v. Dierksen,* Okl., 623 P.2d 602, 605 [1981].

**11.** *Ward v. Corporation Comm'n., supra* note 6 at 507.

**12.** *Ward v. Corporation Comm'n., supra* note 6.

**13.** *Spaeth v. Corporation Comm'n.,* Okl., 597 P.2d 320, 321 [1979].

**14.** *Crest Resources v. Corporation Comm'n., supra* note 5 at 216; *Miller v. Corporation Comm'n., supra* note 5 at 1007.

**15.** *Kingwood Oil Co. v. Corporation Comm'n.,* Okl., 396 P.2d 1008, 1011 [1964]; *Dodds v. Ward,* Okl., 418 P.2d 629, 633 [1966]; *Sohio Petroleum Co. v. Parker,* Okl., 319 P.2d 305, 309 [1957].

**16.** *Spaeth v. Corporation Comm'n., supra* note 13 at 322.

**17.** Post-order activities are within the Commission's cognizance. *See Chancellor v. Tenneco,* Okl., 653 P.2d 204 [1982]; *Crest Resources v. Corporation Comm'n., supra* note 5; *Stipe v. Theus, supra* note 8; *Shell Oil Co. v. Keen,* Okl.,

355 P.2d 997 [1960]; *Cabot Carbon Co. v. Phillips Petroleum Co.,* Okl., 287 P.2d 675 [1955]. Recent jurisprudence from this court limits district court power over Commission orders to ascertaining whether the order is facially void. *Gulfstream Petroleum Corp. v. Layden,* Okl., 632 P.2d 376 [1981] and *Chancellor v. Tenneco, supra* at 207; *see also, McDaniel v. Moyer,* Okl., 662 P.2d 309, 312–313 [1983]. The provisions of both our constitutional and statutory law prohibit the district court from declaring rights in Commission orders. Art. 9 § 20, Okl. Const.; 12 O.S.1981 § 1657. Art. 9 § 20 of our Constitution denies to all courts, except the Supreme Court, the power to review Commission orders. Commission orders made pursuant to the oil-and-gas conservation statutes may be reviewed *only* in the Supreme Court. *See* 52 O.S.1981 §§ 111 and 113. *See also, Woods Petroleum Corp. v. Sledge,* Okl., 632 P.2d 393, 394 [1981].

**18.** This controversy clearly is distinguishable from that considered in *Tenneco Oil Co. v. El Paso Natural Gas Co. See, Tenneco Oil Co. v. El Paso Natural Gas Co., supra* note 3; *see also,* Barnes, Interpretation of Corporation Commission Orders: The Dichotomous Court/Agency Jurisdiction, *supra* note 3; Chatfield, Subject Matter Jurisdiction of the Oklahoma Corporation Commission: *Tenneco Oil Co. v. El Paso Natural Gas Co., supra* note 3; Hart, Interpret-

As a nonparty to the voluntary pooling agreement, who became aggrieved by the activities of the operator, Tenneco could not enforce the private contract. Tenneco's noncontractual status prompted its attempt to seek removal of the present operator by order of the Commission. *Whether this change is in fact necessary to protect correlative rights of the mineral owners is a litigable issue not before us here. This is so because the Commission has yet to complete its investigation into the facts.* The core issue is whether the Commission has authority, stemming from its prior formation of a drilling and spacing unit, to adjudicate disputes over removal of *any* operator in the interest of prevention of waste and protection of correlative rights. I firmly believe the Commission has the adjudicative power Tenneco invoked.

To fulfill the imposed duty properly to oversee the conservation of oil and gas, the Commission must be allowed to exercise its authority with teeth that will give practical effect to the statutory language and clear legislative intent. The "teeth" are yanked forcibly from the Commission when this court interferes and strips that body of powers flowing directly from its plain statutory mandate.

This dispute clearly presents a matter involving "correlative rights" and potential waste.[19] The undisputed purpose of spacing units and the setting of allowables under 52 O.S. 1981 § 87.1 is to preserve our limited natural resources. Injury to the common source and taking oil or gas in undue proportions are surely matters that fall as much under the protective cognizance of the Commission as does the prohibition against drilling unnecessary wells. Today's decision will undermine the "correlative rights" concept and thus partially emasculate those powers lawfully conferred upon the Commission by the legislature.

Powers flowing from the terms of a *compulsory* pooling order, *indisputably within the ambit of the Commission's powers,* are recognized by our law.[20] In my view, the Commission has the same authority under voluntary pooling arrangements as well, and may replace the unit operator when there is a dispute occasioned by operations injurious to correlative rights. It strains credulity to reflect that interest owners might, as a last resort, be forced to petition the Commission for the drilling of additional wells to prevent the drainage which they are unable to stop by a less costly and drastic step—a change of operator.

This court has held that operators are under a duty to manage the leaseholds as a unit and to safeguard correlative rights of the various interest holders.[21] A mineral lessor may enforce a lessee's implied covenant to develop a lease as a prudent operator, including the duty to protect against

ing Corporation Commission Orders—Should the Commission be a Spectator or a Player?, *supra* note 3.

Here, Tenneco does not seek to enforce any contractual liability claimed to be owed by Samson. Rather, what Tenneco invokes is the shield of the Commission's regulatory power to protect correlative rights of the owners in a spacing unit already established through prior interposition of public authority. 52 O.S.1981 § 87.1(e).

**19.** Our jurisprudence states that each mineral interest owner in a common source of supply "has legal privileges as against other owners ... to take oil and gas ... *limited, however, by duties to other owners not to injure the source of supply and by duties not to take an undue pro-*

*portion of the oil and gas* ". [emphasis supplied] *Kingwood Oil Co. v. Corporation Comm'n., supra* note 15 at 1010. We have also said that "a common source of supply in which the owners of mineral interests possess correlative rights is the *underlying geological strata ...*" [emphasis supplied] *Tenneco Oil Co. v. El Paso Natural Gas Co., supra* note 13, footnote 11. A common source of supply is artificially created, through the exercise of state regulatory power, by a Commission order placing a land area within one spacing or drilling unit.

**20.** *See Amarex, Inc. v. Baker,* Okl., 655 P.2d 1040, 1045 [1983] and footnote 17, *supra.*

**21.** *Crest Resources and Exploration Corp. v. Corporation Comm'n., supra* note 5 at 218.

drainage by the lessee's other operations.[22] The court acknowledges these facts and states that the interest holder in a unitized section *has* a right to enforce the unit operator's duty to conduct operations in a prudent manner. But these statements cannot exist in a vacuum. They must be given practical application within the powers granted to the Commission, lest the rights develop into a sprawl of unanswered questions in the minds of interest holders and their legal counsel. If the present circumstances were duplicated in a *compulsory* pooling scenario, they would doubtless be conceded as sufficient to call for protection of "correlative rights". The voluntary pooling order, which serves the same purpose within the spacing unit, cannot be said to transmute the character of the controversy solely on the basis of its verbal costume.

## IV

## SUMMARY OF JURISDICTIONAL ANALYSIS

*Tenneco was not a party to the pooling agreement that appointed Samson as operator. Tenneco cannot sue ex contractu in the district court. Nor can it press for Samson's discharge of its responsibility under some compulsory pooling order. There was none. The relief Tenneco invoked was to remove Samson, as operator, for breach of its law-imposed duty to protect the correlative rights created in a spacing unit by the Commission's order. Tenneco's claim was neither in damages for misfeasance nor for the performance of some contractual duty. Rather, it was for breach of Samson's public-law duty, qua operator within a Commission-created spacing unit, to act with due regard for the correlative rights of the interest holders. In short, Tenneco called for an exercise by the Commission of its regula-*

*tory powers over production activities which the agency is authorized, if not required, to monitor.*[23]

Because the Commission did not improperly exercise its authority over this controversy, I would hold that this court should assume original jurisdiction, dissolve the temporary stay order and deny the writ.

---

**22.** *See Dixon v. Anadarko Production Co.,* Okl., 505 P.2d 1394 [1973].

**23.** Today's opinion deprives Tenneco of the opportunity to secure the Commission's decision upon its claim that Samson has invaded Tenneco's protected interests in the pooled royalties

which were established by a prior pooling and spacing order. Tenneco is compelled to seek relief in the district court, although that tribunal is without authority to declare rights claimed in a Commission order. 12 O.S.1981 § 1657; *Woods Petroleum Corp. v. Sledge, supra* note 17.