MM RESOURCES, INC., Appellant,

v.

A.L. HUSTON, Appellee.

No. 61240.

Supreme Court of Oklahoma.

Dec. 10, 1985.

Gungoll, Jackson & Collins by David Luther Woodward and Bradley A. Gungoll, Enid, for appellant.

McKnight, Gasaway, Beck, Seals & Smith by Ralph E. Seals, Jr., Enid, for appellee.

HODGES, Justice.

MM Resources, Inc. (appellant) filed a petition against A.L. Huston (appellee) in the District Court of Garfield County, seeking money damages in the amount of $43,-781.28 plus interest, attorney's fees and costs. Appellant's complaint is based on an alleged oral agreement whereby appellant agreed to pay appellee's proportionate share of drilling expenses on a leasehold and receive all billings from the operator on behalf of appellee. In return, appellee allegedly agreed to pay appellant directly for his proportionate share of drilling expenses as they became due. After making two payments, appellee ceased to acknowledge any further billings sent by appellant. As a result, appellant filed suit to collect expenses incurred on behalf of appellee in the amount set out above.

Appellee filed a motion to dismiss the petition for lack of subject-matter jurisdiction alleging the forced-pooling order issued by the Oklahoma Corporation Commission (Commission), in which appellant elected to participate, may not be modified by an alleged oral agreement whereby appellee would be bound to appellant's election under the order. Appellee argued below the alleged agreement superseded and modified the pooling order because he did not elect to participate. Consequently he maintained the district court lacked jurisdiction of the matter.

On September 21, 1983, the district court entered its judgment sustaining appellee's motion to dismiss. From an adverse ruling appellant perfected this appeal.

On November 26, 1980, Belamo Oil Company assigned an undivided one-half interest in an oil and gas lease to MM Resources, Inc. This assignment, as recorded in the Garfield County Clerk's Office, was subject to the result of a forced-pooling hearing before the Commission heard on November 25, 1980. The dispute arises from appellant's subsequent assignment of an 11.5% interest in its one-half interest in the oil and gas lease to A.L. Huston on December 10, 1980. This assignment was also subject to the results of the hearing before the Commission heard on November 25, 1980. Pursuant to an alleged oral telephone conversation appellant informed appellee of appellant's election to participate under the forced-pooling order issued by the Commission on December 31, 1980, and appellee allegedly agreed to the election. As part of the alleged oral agreement, appellant advanced all of the proportionate share of drilling expenses attributable to the interests of both appellant and appellee. Appellant alleges in its brief that the operator would not extend credit to appellee or bill appellee directly because appellee lacked a line of credit with the operating company. As part of the alleged oral agreement, appellant agreed to accept billings from the operator on behalf of appellee's working interest and bill appellee directly. This oral agreement gave rise to the present dispute.

Appellee disputes appellant's version of the facts as to whether appellee is subject to appellant's election to participate under the forced-pooling order vis-a-vis the alleged oral agreement.

This Court is not asked to consider the merits of the parties' dispute as to whether a contract in fact existed and the terms thereof. Unsupported allegations and evidence not shown by the record cannot be considered on appeal. *Smith v. Smith*, 579 P.2d 841 (Okla.1978); *Kuhr v. H.W. Goggin*, 398 P.2d 525, 529 (Okla.1965). The narrow issue before this Court is whether it is within the subject-matter jurisdiction of the district court to decide whether an alleged private agreement, which is subject to a forced-pooling order, may define the terms in which assignee of a mineral interest will pay his proportionate share of drilling and operating expenses to its assignor who had elected to participate. This question should be answered in the affirmative.

It is doubtless that this Court may inquire into the jurisdiction of the district court. *Dickson v. Dickson*, 637 P.2d 110 (Okla.1981); *Durham v. Sharum*, 203 Okl. 426, 222 P.2d 1029 (1950). Recent jurisprudence from this Court has addressed the issue of the blurred subject-matter jurisdiction of district courts and the Commission over matters related to the development of oil and gas drilling operations. In *Tenneco Oil Co. v. El Paso Natural Gas Co.*, 687 P.2d 1049 (Okla.1984), a quiet-title action, this Court held parties to a forced-pooling order may privately contract as to enlarge or otherwise define the terms set forth in the pooling order and the district court may settle controversies regarding the obligations under the contract. It is clear from *Tenneco* that the majority of this Court takes the position that the proper forum to decide private-rights disputes in the district court. 687 P.2d at 1053.

In *Samson Resources Company v. Corporation Commission*, 702 P.2d 19 (Okla. 1985), the Commission's duty to protect correlative rights was further defined in light of this Court's holding in *Tenneco*. The Commission has exclusive jurisdiction in "situations in which a conflict exists which actually affects such rights within a common source of supply and thus affects the public interest in the production from that source as a whole." *Samson*, 702 P.2d at 22. The Commission's jurisdiction has thus been limited by this Court's holdings in *Tenneco* and *Samson*. In *Samson*, this Court set out several methods within the Commission's power to prevent waste and protect correlative rights; however, the facts of the present case are not within any of the conferred methods. 702 P.2d at 23. In addition, the *Samson* holding recognizes the inability of the Commission to entertain a suit for money damages thereby placing a dispute for breach of a duty where damages are sought, particularly within the province of the district courts. 702 P.2d at 23.

Although *Samson* involved a voluntary pooling agreement rather than a forced-pooling, the opinion cites *Tenneco* for the proposition that parties to a Commission forced-pooling order may privately contract as to their rights and obligations under the pooling order. If a dispute arises as to the respective rights of the parties the matter should be resolved in the district courts. 702 P.2d at 21.

The Court in *Tenneco* addressed the public rights versus private rights conflict as related to subject-matter jurisdiction of the Commission and the district courts. This Court did not go so far as to definitively define public rights and private rights. However, this Court recognized the distinction made by the United States Supreme Court in *Northern Pipeline Company v. Marathon Pipeline*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982):

"... [A] matter of *public rights must at a minimum* arise '*between the government and others.*' In contrast, '*the liability of one individual to another under the law as defined,*' is a matter of *private rights.*"

*Tenneco*, 687 P.2d at 1053.

Appellee's challenge in the instant case does not fall within the public issue of conservation of oil and gas; any agreement

between the parties defining the terms of a forced-pooling order is private and thus properly before the district court.

The present case clearly falls outside agency issues of public-law. This dispute does not present a matter involving protection of correlative rights or prevention of waste and is therefore outside the scope of the Commission's regulatory power as conferred by 17 O.S. 1981 § 52. The dispute presented in this case is of a proprietary private nature. We hence hold that the proper forum for appellant to enforce any contractual liability is the district court.

The trial court's judgment dismissing this action from district court is reversed and the cause is remanded so as to address the merits of the dispute.

SIMMS, C.J., DOOLIN, V.C.J., and LAVENDER, WILSON, KAUGER and SUMMERS, JJ., concur.

OPALA, J., concurs in judgment.

OPALA, Justice, concurring in the judgment.

While I join in today's judgment, I cannot accede to the text of the court's opinion.

The line of demarcation to be drawn for separation of issues within the district court's cognizance from those which fall within the Corporation Commission's [Commission's] jurisdiction lies along that often-difficult-to-chart boundary location where the *statutory limit* of the Commission's *regulatory power* over the oil-and-gas industry meets with the periphery of the law's still-preserved *freedom to govern one's actions by contract alone.* See *Tenneco Oil Co. v. El Paso Natural Gas, Okl.,* 687 P.2d 1049, 1060 [1984] (Opala, J., dissenting). If the parties' dispute is over contract rights which they exercised within the permissible sphere, a purely private controversy is presented. Because this litigation clearly does not call for judicial interpretation or modification of a prior forced-pooling order, *no* facet of the Commission's regulatory power came to be invoked here, and *no* agency issue was tendered for adjudication. It is hence apparent that subject-matter jurisdiction of this *contractual claim* resides in the district court. Cf. *Samson Resources Co. v. Corporation Com'n.,* Okl., 702 P.2d 19, 24, 26–27 [1985] (Opala, J., dissenting).